No. 50,090

MICKEY BEHRMANN, *Plaintiff-Appellee,* v. PUBLIC EMPLOYEES RELATIONS BOARD, *Defendant-Appellant.*

(591 P.2d 173)

**436**

Opinion filed February 24, 1979.

*Janet Chubb,* assistant attorney general, argued the cause and *Curt T. Schneider,* attorney general, and *Douglas B. Muxlow,* assistant attorney general, were with her on the brief for appellant.

*Russell Cranmer,* of Michaud, Cranmer, Syrios and Post, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an interlocutory appeal by the Public Employees Relations Board (PERB or Board) from an order of the district court holding K.S.A. 75-4334(*b*) unconstitutional as violating article 3, section 1 of the Kansas constitution. Appellee, Mickey Behrmann, was employed by the sewer maintenance department of the City of Wichita. After being dismissed by the City she filed a complaint with appellant alleging the City had engaged in a prohibited practice under K.S.A. 75-4333(*b*)(4). A hearing was held before the Board and an order was issued by the Board finding the City had engaged in a prohibited practice under the statute. The Board ordered appellee reinstated in her job but without back pay. Behrmann filed a petition for review in the district court alleging the order of the Board was arbitrary, capricious and unreasonable and asked for a modification of the order to include back wages and other benefits. During the course of the appeal, Behrmann sought a trial de novo which was granted by the district court.

The PERB brought this interlocutory appeal pursuant to an order granted by the district court which also stayed further proceedings pending a determination of this appeal. While the parties list three points on appeal, the basic issue is whether a de novo review of quasi-judicial decisions of administrative bodies is required by article 3, section 1 of the Kansas constitution and, if so, is 75-4334(*b*), which provides a more limited scope of review, unconstitutional?

Prior to 1972, the Kansas constitution provided as follows:

"The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law; and all courts of record shall have a seal to be used in the authentication of all process." Kan. Const. art. 3, § 1 (1859).

Subsequent to 1972, after its amendment, the judicial article has read as follows:

"The judicial power of this state shall be vested exclusively in one court of justice, which shall be divided into one supreme court, district courts, and such other courts as are provided by law; and all courts of record shall have a seal. The supreme court shall have general administrative authority over all courts in this state." Kan. Const. art. 3, § 1 (1978 Supp.).

K.S.A. 75-4334 governs the procedure for an action before the Board under the Public Employer-Employee Relations Act (K.S.A. 75-4321, *et seq.*) when controversies concerning alleged prohibited practices are involved. Subsection (*a*) sets forth the time span for filing a prohibited practices complaint, provides for notice, filing of an answer by the accused party and for a hearing before the Board.

K.S.A. 75-4334(*b*) provides:

"(*b*) The board shall state its findings of facts upon all the testimony and shall either dismiss the complaint or determine that a prohibited practice has been or is being committed. If the board finds that the party accused has committed or is committing a prohibited practice, the board shall make findings as authorized by this act and shall file the same in the proceedings. Any person aggrieved by a final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in the district court, in the judicial district where all of the major geographical area of the public employer is located, by filing in such court a petition praying that the order of the board be modified or set aside, with copy of the complaint filed with the board, and thereupon the aggrieved party shall file in the court the record in the proceeding certified by the board. *Findings of the board as to the facts shall be conclusive unless it is made to appear to the court's satisfaction that the findings of fact were not supported by substantial evidence and the record considered as a whole.*" (Emphasis added.)

Subsections (*c*) and (*d*) are not material to the issues herein.

While much space and argument is devoted by each party in the briefs to a discussion of whether the PERB was making a quasijudicial decision, both parties appear to conclude that it was. We agree. See *Coggins v. Public Employee Relations Board,* 2 Kan. App. 2d 416, 581 P.2d 817, *rev. denied* 224 Kan. clxxxvii (1978). In *Gawith v. Gage's Plumbing & Heating Co., Inc.,* 206

Kan. 169, 476 P.2d 966 (1970), Justice Schroeder (now Chief Justice) cites with approval what he calls the "classic statement setting out the abstract test" to be used in determining between an administrative entity performing a judicial or legislative function and quotes Justice Holmes from the case of *Prentis v. Atlantic Coast Line*, 211 U.S. 210, 53 L.Ed. 150, 29 S.Ct. 67 (1908), as follows:

" '. . . A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. . . .' (p. 226.)" 206 Kan. at 178.

K.S.A. 75-4334(*b*) limits the scope of review in an appeal from a decision of the PERB to the traditional three-pronged test. In *Kansas Ass'n of Public Employees v. Public Service Employees Union*, 218 Kan. 509, 544 P.2d 1389 (1976), this court in considering the scope of review referred to the portion of the statute emphasized above and stated:

"We thus have an unequivocal statement that in reviewing the action of the Public Employee Relations Board the courts shall apply the customary standards for the review of the acts of an administrative agency. The leading case on that issue is *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P.2d 828, where we said:

'A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.' (Syl. ¶ 1.)" p. 511.

This now brings us to the real question before the court. Appellee contended, and the district court so held, that the amendment of the judicial article of the Kansas constitution in 1972 to provide that "The judicial power of this state shall be vested *exclusively* in one court of justice . . . ." severed all judicial power from the executive and legislative branches of the government and precludes administrative agencies from making quasi-judicial decisions unless the same are to be reviewed de novo in the district court. The trial court held that K.S.A. 75-4334(*b*) grants quasi-judicial or judicial powers to the PERB in violation of article 3, section 1. The court in its memorandum opinion stated:

"Applied to the Kansas Constitution, it is abundantly clear that to say that, 'The

judicial power of this state shall be vested exclusively in one court of justice. . .' is to say that no entity, save the courts, shall have any judicial power.

"Does K.S.A. 75-4334(b) grant judicial power to the Public Employees Relations Board? Does the statute attempt to preclude the court from exercising judicial power? If the answer to either question is yes, then the statute is unconstitutional, for the legislature has attempted to vest power in an administrative agency which power is reserved exclusively to the court. In fact, the answer to both questions is yes."

. . . .

"In this case, K.S.A. 1974 Supp. 75-4334(b) does not provide that the district court shall hear an appeal from the Kansas Public Employees Board on a de novo basis. In fact the statute limits the scope of review by the district court. However, inquiry must be made into the function that the Kansas Public Employees Relations Board was performing. That administrative governmental entity was charged with the obligation of determining whether the defendant had committed a prohibited practice when the defendant terminated the plaintiff. The board was obligated to make an inquiry that would investigate, declare and enforce liabilities as they stand on present or past facts. The inquiry which the board made was judicial in nature. But the constitution now vests the judicial power of this state exclusively in one supreme court of justice, which shall be divided into one supreme court, district court and such other courts as are provided by law. The Kansas Public Employees Relations Board is not a court. It is not an entity within the judicial branch of our state government. The statute that bestowed judicial functions on that board is contrary to the Amended Article III, Section 1. The statute provides for the usurption [sic] of judicial function by an executive administrative agency. That statute which limits the scope of review by the court is unenforceable for the reason that it contradicts amended Article III, Section 1, of the Constitution of the State of Kansas."

Appellant contends that the use of the word "exclusively" in the amended section expresses the intent to achieve court unification and not an attempt to preclude administrative agencies of the executive and legislative branches of government from exercising quasi-judicial functions under proper circumstances. In ascertaining the meaning of a constitutional provision, the primary duty of the courts is to look to the intention of the makers and adopters of that provision. *State, ex.rel., v. Highwood Service, Inc.,* 205 Kan. 821, 473 P.2d 97 (1970); *Wall v. Harrison,* 201 Kan. 600, 443 P.2d 266 (1968). In interpreting and construing a constitutional amendment the court must examine the language used and consider it in connection with the general surrounding facts and circumstances that caused the amendment to be submitted. *State, ex rel., v. Anderson,* 180 Kan. 120, 299 P.2d 1078 (1956).

As early as 1928, the Judicial Council of Kansas made recommendations to the governor that article 3 of the constitution, pertaining to the judiciary, should be amended, a primary consideration being as follows:

"(1) To make it clear that the judicial system is a unit, with the proper jurisdiction and functions of the respective courts outlined in such a way as to show their relations each to the other, rather than to construct them as separate units." 2nd Annual Report of the Judicial Council of Kansas, 1928, at p. 9.

By 1935, the judicial council drafted a proposal for the legislature, the continuing expressed intent being to "provide a system of courts as distinct from separate judicial units." 9th Annual Report—Part 2, Kansas Judicial Council Bulletin, April, 1935, at p. 28.

In 1941, the judicial council reported that twelve constitutional amendments had been introduced that year. Since only three could be submitted to the voters, the legislature approved none of them. 15th Annual Report—Part 1, Kansas Judicial Council Bulletin, April, 1941, at p. 21.

In 1968, the legislature established a citizen's committee to study and propose amendments to the constitution. L. 1968, ch. 265. The committee reported to the legislature as authorized in February of 1969 in a report numbering some 124 pages.

In its report the committee summarized the significant recommended changes in article 3 and the objectives they were designed to accomplish:

"1. *Create a unified court with overall administrative and procedural rulemaking powers in the supreme court branch thereof.*

"2. Remove the maximum limitation of seven justices on the supreme court, and permit the supreme court to sit in a panel of five justices provided a majority of justices sitting must concur to reach a decision.

"3. Provide for continuity of performance of duties of chief justice when there is incapacity, and permit a justice eligible for chief justice to decline the position of chief justice without resigning from the court.

"4. Raise the term of office of district judges from four to six years.

"5. Enable the legislature to submit to the voters of each judicial district methods of non-partisan selection of the district judge.

"6. Provide for temporary service of district judges on the supreme court.

"7. *Eliminate the requirement for election of a clerk of the district court in* each county and permit the legislature to provide by law for clerks of the district courts and the method of selection thereof.

"8. *Eliminate the present constitutional requirement that there must be justices of the peace and probate courts.*

"9. Enable the legislature to provide for ultimate reorganization of the various branches of the unified court.

"10. Enable the removal of incapacitated justices and judges by methods other than impeachment.

"11. Require implementing legislation to abolish any present court or to change the term of office of any present justice or judge." (Emphasis added.) *Report of the Citizens' Committee on Constitutional Revision,* p. 29 (Feb., 1969).

The committee's commentary on the proposed changes revealed the purposes behind amending article 3, section 1:

"The committee believes that the transcendent requirement of the judiciary is to provide justice with the least possible delay, and that the main areas of reform to accomplish this ultimate goal, not necessarily in the order named, are those designed to attain: (1) proper supervision, administration and discipline of judicial personnel; (2) qualified judges free of political pressures and considerations; (3) such flexibility as will insure efficient use of available judges; (4) steadfast recognition of and insistence upon vigilant maintenance of the doctrine of separation of powers—with the three branches of government free from encroachments of each other; (5) adequate tenure and compensation to attract and hold qualified judges on the bench; and (6) public confidence in the judicial system.

"*With the foregoing objectives in mind, section 1 of the proposed Article would create a unified court with overall administrative authority in the supreme court branch thereof* and would vest the supreme court with rule making power regarding process, practice, and procedure at all levels of the unified court, as well as regarding appeals. Such rule making power is, in reality, an inherent power of the judiciary." (Emphasis added.) *Report* at 43.

The committee does not discuss the specific effect of the word "exclusively" other than under the above quoted general comment.

Chief Justice Fatzer, in his 1972 message to the joint session of the legislature in his state of the judiciary address, stated:

"This proposed article has been reviewed by the members of the supreme court and the district judges over the past two or three years and has the general support of the justices and judges. As chief justice, I strongly recommend that you give serious consideration to passing this proposed amendment on to the people of this state for their consideration. *The reforms set out in the proposal are reasonable— they are not radical*—and permit the legislature and the courts to make such changes in the future as the need arises." (Emphasis supplied.) Senate and House Journals, State of Kansas, 1972, House Journal at p. 371.

See also Fatzer, *The State of the Kansas Judiciary,* 11 Washburn L.J. 343, 347 (1972).

The two branches of the legislature thereafter deliberated in committee and the minutes indicate the general purpose of the amendment was to unify and modernize the judicial system. Nowhere in the history of the amendment of the judicial article is there any indication that the intent was to completely prohibit the other two branches of government from exercising certain quasi-judicial functions.

Thus it seems clear from the history of the judicial amendment that its primary purpose was one of court unification and that the use of the word "exclusively" in the article was to establish one court system and was never intended to prevent the legislature from conferring quasi-judicial powers on administrative agencies when necessary to enable them to carry out their functions.

While it is vital to the preservation of our form of government that this Court remain vigilant in guarding the separation of powers among the executive, legislative and judicial branches, such separation must be maintained on a practical basis or government as we know it would cease to function.

"Executive power is not 'separated' from judicial and legislative power, legislative power is not 'separated' from executive and judicial power, and judicial power is not 'separated' from legislative and executive power. The three kinds of powers are commonly blended. All three kinds of powers, along with other powers that cannot be classified with separation of powers labels, are often poured together, and the resulting variable mixtures can be found in each of the three branches of government, as well as in the independent agencies.

"Even though the three kinds of powers are commonly blended within each of the three branches, the affirmative reality of the theory of separation of powers is that the main judicial power is in the courts, the main executive power is in the President and in those under him, and the main legislative power is in Congress.
. . . .
"That each branch interferes in the activities of each other branch is not in violation of the theory of separation of powers but is in conformity with the portion of the theory that is called checks and balances. Such interference may be one of the most desirable results of the separation of powers theory, but it also involves special dangers." 1 Davis, *Administrative Law Treatise,* § 2:2, pp. 64-65 (2d Ed. 1978). See generally Davis, Ch. 2 and § 3:10.

The doctrine of separation of powers among the legislative, executive and judicial branches of our state government has been recognized throughout our decisions as being one designed to avoid and prohibit a dangerous concentration of power in one branch of the government to the detriment of the others. In *Van Sickle v. Shanahan,* 212 Kan. 426, 511 P.2d 223 (1973), former Chief Justice Fatzer presents an excellent review of the history and application of the doctrine which need not be repeated here.

In *State, ex rel., v. Bennett,* 219 Kan. 285, 547 P.2d 786 (1976), we said:

"In our judgment a strict application of the separation of powers doctrine is inappropriate today in a complex state government where administrative agencies exercise many types of power including legislative, executive, and judicial powers

often blended together in the same administrative agency. The courts today have come to recognize that the political philosophers who developed the theory of separation of powers did not have any concept of the complexities of government as it exists today. Under our system of government the absolute independence of the departments and the complete separation of powers is impracticable. We must maintain in our political system sufficient flexibility to experiment and to seek new methods of improving governmental efficiency. At the same time we must not lose sight of the ever-existing danger of unchecked power and the concentration of power in the hands of a single person or group which the separation of powers doctrine was designed to prevent." pp. 288-289.

Appellee argues for the strict application of the separation of powers doctrine based upon the rule that words used in the constitution are to be given their natural and popular meaning as usually understood by the people who adopt them. *State, ex rel., v. Fadely,* 180 Kan. 652, 659, 308 P.2d 537 (1957); *Hunt v. Eddy,* 150 Kan. 1, 90 P.2d 747 (1939). Appellee contends that the use of the word "exclusively" precludes the other branches of government from exercising any judicial power and then makes an ingenious argument that administrative bodies may make quasi-judicial decisions so long as they are reviewable by trial de novo. The basis of the argument appears to be that administrative bodies making quasi-judicial decisions subject to review de novo are not asserting any judicial power and such power is thereby retained by the courts. It is difficult to see how a body may perform a judicial or quasi-judicial function if it has no judicial power in the first instance. It would seem that without any such power any decision of a quasi-judicial nature would be void ab initio and there would be nothing to review in district court, de novo or otherwise.

Article 3, section 1, as amended, does not prevent administrative agencies from performing quasi-judicial functions reasonably necessary to the proper performance of their administrative duties and when authorized by the legislature, and the scope of review of such functions may be determined by the legislature.

A comprehensive discussion of the law relevant to court review of administrative decisions is contained in the recent case of *Brinson v. School District,* 223 Kan. 465, 576 P.2d 602 (1978):

"The right to an appeal in this state is neither a vested nor constitutional right, but is strictly statutory in nature. It may be limited by the legislature to any class or classes of cases, or in any manner, or it may be withdrawn completely. It lies within the legislative domain to determine from what orders or judgments an appeal may be taken. [Citations omitted.] Courts have no inherent appellate

444

jurisdiction over the official acts of administrative officials or boards except where the legislature has made some statutory provision for judicial review." p. 467.

K.S.A. 75-4334 does not specifically provide for review by trial de novo but to the contrary, provides the customary three-pronged scope of review as stated in *Kansas Ass'n of Public Employees,* 218 Kan. 509.

We hold K.S.A. 75-4334(*b*) is not unconstitutional as being violative of amended article 3, section 1 of the Kansas constitution and such section does not require a trial de novo in the district court on appellee's petition to review the orders of the Public Employees Relations Board.

The judgment is reversed and the case remanded for further proceedings consistent with the views herein set forth.