(597 P 2d 679)

No. 49,900

ELAINE ELLIOTT, An Incapacitated Person, *Appellant,* v. STATE DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES OF KANSAS, *Appellee.*

Opinion filed July 13, 1979.

*Ernest J. Deines,* of Deines & Wagner, of WaKeeney, for the appellant.

*Stephen J. Craeton,* of Topeka, for the appellee.

Before FOTH, C.J., ABBOTT and PARKS, JJ.

FOTH, C.J.: The issue in this case is whether Kansas may refuse to furnish medical assistance to an otherwise eligible Kansas resident who chooses to receive care in another state. We hold that it may if the choice is in fact voluntary.

Elaine Elliott was born in Kansas in 1921, the daughter of Kansas natives who throughout her lifetime have been residents of Kansas. She was a retarded child, and has been adjudged to be an incapacitated person. She attended school only one year. Otherwise she remained at home until 1962, when her parents decided to institutionalize her. In that year, as her judicially appointed legal guardians, the parents placed Elaine in a long term care home at Bethpage Mission in Axtell, Nebraska, where she has since remained. In 1977 the parents applied for medical assistance from the state department of social and rehabilitation services. Assistance was denied at the local level and the denial was affirmed by the state appeals committee of SRS after a hearing under K.S.A. 75-3306. Elaine's parents appealed to the district court, which upheld the decision of the appeals committee, and they have now appealed to this court.

Absent statutory authority to the contrary, judicial review of administrative decisions, even when made by an agency exercis-

ing quasi-judicial functions, is limited to determining as a matter of law whether: (1) the tribunal acted fraudulently, arbitrarily or capriciously; (2) the administrative order is substantially supported by evidence; and (3) the tribunal's action was within the scope of its authority. *Woltje v. Kansas Public Employees Retirement System,* 225 Kan. 495, 592 P.2d 872 (1979); *Behrmann v. Public Employees Relations Board,* 225 Kan. 435, 591 P.2d 173 (1979); *Stephens v. Unified School District,* 218 Kan. 220, 546 P.2d 197 (1975). That limitation is applicable here.

The district court examined the decision of the appeals committee in the light of the controlling subsections of K.A.R. 30-6-10, promulgated by the secretary of SRS, and found it reasonable. Subsection I defines residence. On this aspect the district court concluded that "[u]nder the record in this case, the applicant would probably have to be considered as meeting the residency requirement." SRS admits this much in its brief. The court noted, however, that there is a separate physical presence requirement in Subsection J which the appellant obviously does not meet:

"J.   Physical presence. An applicant or recipient must be living in the state of Kansas.

"Exception:   A person receiving medical care including long-term care outside of Kansas whose health would be endangered by the postponement of medical services until his or her return to the state or if travel to return to Kansas would endanger his or her health may be determined eligible for participation in the medical assistance program if such individual is a resident of Kansas and all other eligibility factors are met. Persons receiving care on an ongoing basis in a care facility in a state other than Kansas, and who do not return to a care facility in Kansas when they are able to do so, shall no longer be eligible to participate in the Kansas medical assistance program. For persons who are minors or who are under guardianship the actions of the parent or guardian shall be deemed to be the actions of the child or ward in determining whether or not the person is remaining outside the state voluntarily."

On the basis of this subsection the court held:

"[T]he Appeals Committee had a valid basis for denying medical assistance under their regulation requiring physical presence and the State Department of Social and Rehabilitation Services has the authority to promulgate such a regulation. The evidence is insufficient to bring the applicant under the exceptions to the physical presence regulation."

On appeal two basic arguments are made in support of Elaine's eligibility. First, it is contended that the local SRS office denied assistance because of an erroneous finding that she was a nonresident. While that may be true, the decisions of both the appeals

committee and the district court were based on administrative requirements that, with certain limited exceptions, recipients of medical assistance must be physically present in Kansas. The district court clearly assumed that she was a resident of Kansas. Thus any flaw in the reasoning of the local office did not figure in the decision now under review.

Her second contention is that she is eligible even under the administrative requirement, now embodied in K.A.R. 30-6-10 J, quoted above. The regulation was designed to comport with the federal regulations controlling the contents of state plans for administering medical assistance financed under the Social Security Act, and specifically former 45 C.F.R. § 248.40 (1976). Two circumstances are recognized where medical assistance will be granted to a resident who is outside the state: where immediate treatment is medically required; and where travel to the home state would endanger the patient's health. (The federal regulation had a third element, an emergency illness or accident, which was covered by the first portion of the Kansas regulation.) The trial court found that Elaine had not shown that she fit either exception; there was no immediacy in her situation, and while she was well adjusted in her Nebraska environment there was no evidence that a move would be harmful to her health. The record supports these findings. The burden was on her to establish that she came within an exception. *Cf. State v. White,* 213 Kan. 276, 280, 515 P.2d 1081 (1973); *City of Winfield v. Board of County Commissioners,* 205 Kan. 333, Syl. ¶ 2, 469 P.2d 424 (1970). Under accepted rules of appellate review we cannot disturb what are essentially negative findings. *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, Syl. ¶ 5, 548 P.2d 719 (1976).

There is, however, one additional facet to this case. Effective July 1, 1978, the legislature spoke directly to cases such as Elaine's in L. 1978, ch. 159, § 3. That enactment added a new subsection to the statutory requirements for assistance, which now appears as K.S.A. 1978 Supp. 39-709(*e*):

"(*e*) A person who is receiving medical care including long-term care outside of Kansas whose health would be endangered by the postponement of medical care until his or her return to the state or whose health would be endangered by travel to return to Kansas, may be determined eligible for medical assistance if such individual is a resident of Kansas and all other eligibility factors are met. Persons who are receiving medical care on an ongoing basis in a long-term medical care facility in a state other than Kansas and who do not return to a care facility in

Kansas when they are able to do so, shall no longer be eligible to receive assistance in Kansas *unless such medical care is not available in a comparable facility or program providing such medical care in Kansas.* For persons who are minors or who are under guardianship, the actions of the parent or guardian shall be deemed to be the actions of the child or ward in determining whether or not the person is remaining outside the state voluntarily." Emphasis added.

The statute, it will be seen, follows the text of K.A.R. 30-6-10 J almost verbatim, except for the addition of the italicized language. By the addition the legislature added one more exception to the disqualification of residents receiving care out of state: if such care is not available in a comparable facility in Kansas, the recipient need not return to Kansas to be eligible for assistance.

The evidence on this issue below is limited to the testimony of Elaine's parents that they are not aware of any facility in Kansas offering care, training and therapy comparable to that which she receives in Nebraska. On this question SRS made no administrative finding and offered no evidence, and the trial court made no finding, for the simple reason that the statute was not in effect when those decisions were reached. The availability of comparable facilities was not relevant to the issues presented below.

The intent of the statute is clear. Otherwise eligible residents who voluntarily choose to secure care outside the state are not eligible to receive medical assistance from this state. In the case of Elaine, the choice of her guardians is her choice. If, however, she can only receive the necessary care in another state, then the choice is not really voluntary and she is not rendered ineligible by choosing to go where the care is available.

Eligibility for assistance is an ongoing question, subject to constant reexamination and a mandatory redetermination at least once a year. K.A.R. 30-6-4; 30-6-21. The agency and the trial court were right in making their determinations under the law then existing. There has been an intervening change in the law which may change the result, depending on facts which do not appear in the record. Rather than require Elaine to make a new application, in our opinion justice would be better served by affording the agency an opportunity in this case to reexamine Elaine's eligibility under the statute. For that purpose it may conduct a new hearing and receive evidence as to the availability of "comparable" facilities and programs in Kansas. This would include, we assume, consideration of her individual needs for treatment and training as well as physical facilities, associates and general environment.

The judgment is vacated and the case is remanded to the district court with directions to further remand to the appeals committee of SRS for further proceedings consistent with this opinion.