No. 51,343

KANSAS STATE BOARD OF HEALING ARTS, *Appellee,* v. STEVENS B. ACKER, M.D., *Appellant.*

(612 P.2d 610)

Opinion filed June 14, 1980.

*Richard M. Klinge,* of Kaplan, McMillan and Klinge, of Wichita, argued the cause and *David L. Ryan,* of Topeka, was with him on the brief for appellant.

*Wallace M. Buck, Jr.,* of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This appeal by Stevens B. Acker, M.D., of Wichita, from a district court decision upholding a decision of the Kansas State Board of Healing Arts (Board) to suspend appellant's license to practice medicine for two years culminates nearly ten years of controversy between Dr. Acker on one hand and Wesley Medical Center of Wichita (Wesley), the Medical Society of Sedgwick County (Society) and the Board on the other.

Dr. Acker is a graduate of the Kansas University School of Medicine and has been operating a general or family practice in Wichita since 1961. Prior to 1971 he performed general surgery, delivered babies and had general hospital privileges at Wesley and other Wichita hospitals. It appears that in 1971 a dispute arose between Dr. Acker and Wesley over some missing hospital records. Dr. Acker was suspended by Wesley from all admitting privileges, and subsequently other Wichita hospitals followed suit. Dr. Acker has not had hospital privileges in Wichita since the early 1970's. Nevertheless his practice flourished and he developed a substantial general practice with numerous obstetrical patients. Between 1971 and 1977, Dr. Acker sought to regain his Wesley privileges by compliance with certain requests from the Board and the Society but was not successful. Twice during this period of time the Society filed complaints with the Board, but on each occasion the Board declined to take any action.

On October 13, 1977, the Board filed a petition against Dr. Acker in which it sought the revocation, suspension or limitation of his license to practice medicine. The allegations against Dr. Acker were:

"That probable cause exists that Dr. Acker did commit acts which would be deemed dishonorable conduct and professional incompetency, to wit:

(a) Failed to inform and deliberately misled patients in regard to his ability to deliver babies at Wesley Medical Center knowing full well he was denied hospital privileges at all Wichita hospitals.

(b) Improper diagnosis of hypoglycemia in several cases when hypoglycemia was not indicated."

After a hearing before a panel of the Board, which included thirty witnesses, eighty-four exhibits and covers eight hundred thirty-four pages of transcript, the panel issued its report. The panel found from the evidence that:

"4. Testimony was presented showing that the respondent misled and failed to inform patients in regard to his ability to deliver babies at Wesley Medical Center knowing that he had no hospital privileges at any Wichita hospitals.

"5. Expert testimony failed to establish that respondent's hypoglycemia diagnoses were inaccurate."

The panel then reached the following conclusions and recommendations:

"C. Conclusions of Law

"1. The evidence introduced by the State substantially supports Count A of the Petition filed by the Attorney for the Board.

"2. The evidence introduced by the State is inconclusive as it pertains to Count B of the Petition filed by the attorney for the Board.

"D. Recommendations to Board

"1. The respondent, Stevens B. Acker, M.D., be adjudged guilty of dishonorable conduct by reason of his having failed to inform and having deliberately misled patients in regard to his ability to deliver babies at Wesley Medical Center while knowing full well that he was denied hospital privileges at all Wichita hospitals.

"2. The respondent be adjudged not guilty of professional incompetence, due to lack of evidence on Count B.

"3. That the respondent be suspended from the practice of medicine and surgery for a period of two years, commencing on the date of filing of the Order of the Board."

On February 11, 1978, the Board issued its order of suspension in which it repeated verbatim the foregoing findings and conclusions of the hearing panel and then rendered its decision and orders as follows:

"D. Decision of the Board

"1. The defendant, Stevens B. Acker, M.D., be adjudged guilty of dishonorable conduct by reason of his having failed to inform and having deliberately misled patients in regard to his ability to deliver babies at Wesley Medical Center while knowing full well that he was denied hospital privileges at all Wichita hospitals.

"2. The defendant be adjudged not guilty of professional incompetence, due to lack of evidence on Count B.

"3. That the defendant be suspended from the practice of medicine and surgery for a period of two years, commencing on the date this order is served on Stevens B. Acker, M.D.

IT IS THEREFORE BY THE BOARD ORDERED:

"1. That the license of the defendant, Stevens B. Acker, M.D., to practice Medicine and Surgery in this state is hereby suspended for two years commencing on the date this order is served on the defendant.

"2. That the defendant shall pay the costs of this proceeding as provided by law in the amount to be determined."

Dr. Acker appealed to the district court where his request for a trial de novo was denied. On July 27, 1979, the trial court issued its memorandum decision affirming the action of the Board. This appeal by Dr. Acker followed. Additional facts will be set forth as they become necessary.

Although K.S.A. 1978 Supp. 65-2836 was amended in 1979, the amendments are not pertinent to this appeal and we will consider the statute as it now exists.

K.S.A. 1979 Supp. 65-2836 provides in part:

"A license may be revoked, suspended or limited when the licensee has been found to have committed any of the following acts: (a) Fraud in securing the license. (b) Immoral, unprofessional or dishonorable conduct or professional incompetency. (c) Conviction of a felony if the board determines, after investigation, that such person has not been sufficiently rehabilitated to warrant the public trust. (d) Use of untruthful or improbable statements or flamboyant, exaggerated or extravagant claims in advertisements concerning such licensee's professional excellence or abilities. (e) Use and distribution of literature advertising professional abilities. (f) Other unethical advertising practice. (g) Addiction to or distribution of intoxicating liquors or drugs for any other than lawful purposes. (h) Willful or repeated violation of this act, the pharmacy act of the state of Kansas or the uniform controlled substances act, or any rules and regulations adopted pursuant thereto, or any rules and regulations of the secretary of health and environment which are relevant to the practice of the healing arts. (i) Unlawful invasion of the field of practice of any branch of the healing arts in which the licensee is not licensed to practice. (j) Failure to pay annual renewal fees specified in this act. (k) Failure to take some form of postgraduate work each year or as required by the board. (l) Engaging in the practice of the healing arts under a false or assumed name, or the impersonation of another practitioner. The provisions of this subsection relating to an assumed name shall not apply to licensees practicing

under a professional corporation or other legal entity duly authorized to provide such professional services in the state of Kansas. (*m*) Inability to practice the branch of the healing arts for which such person is licensed with reasonable skill and safety to patients by reason of illness, alcoholism, excessive use of drugs, controlled substances, chemical or any other type of material or as a result of any mental or physical condition."

K.S.A. 1979 Supp. 65-2837 defines professional incompetency and unprofessional conduct setting forth seventeen specific instances of the latter.

K.S.A. 1979 Supp. 65-2865 provides:

"The board shall promulgate all necessary rules, regulations and forms, not inconsistent herewith, for carrying out the provisions of this act, which rules and regulations shall include standards for the dispensing of drugs by persons licensed to practice medicine and surgery. It may also adopt rules and regulations supplementing any of the provisions herein contained but not inconsistent with this act. All rules and regulations promulgated and adopted by the board shall be filed with the revisor of statutes as required by law."

The charges for which Dr. Acker's license was suspended were obviously based upon the commission of "dishonorable conduct" as set forth in 65-2836(*b*), thus the portion of the statute with which we are directly involved reads:

"A license may be revoked, suspended or limited when the licensee has been found to have committed any of the following acts: . . . (*b*) Immoral, unprofessional or dishonorable conduct or professional incompetency."

Appellant attacks the constitutionality of the statute as being vague and indefinite as the legislature has failed to provide by statute and the Board has failed to provide by rules and regulations any definition of the terms "immoral or dishonorable conduct."

Are the words "immoral" and "dishonorable" so vague and indefinite that a person admitted to the practice of the healing arts in the State of Kansas would not know his rights, obligations and limitations thereunder? We think not.

In considering the constitutionality of a statute, "[i]t is the duty of this court to uphold legislation rather than defeat it. It is presumed that the legislature intended to pass a valid law. If there is any reasonable way to construe legislation as constitutionally valid, it should be so construed." *Parker v. Continental Casualty Co.,* 191 Kan. 674, 680, 383 P.2d 937 (1963).

Appellant argues that as neither the legislature, by statute, nor the Board, by rules and regulations, have defined what conduct is

proscribed as being immoral or dishonorable such terms are without sufficient clarity to withstand constitutional attack. He contends that as the terms "unprofessional conduct" and "professional incompetency" have been defined at length (K.S.A. 1979 Supp. 65-2837), similar specific definitions or standards must be adopted to establish what may be immoral or dishonorable. Several cases are relied upon to support appellant's position. See *Tuma v. Board of Nursing*, 100 Idaho 74, 593 P.2d 711 (1979); *Megdal v. Oregon State Bd. of Dental Examiners*, 228 Or. 255, 605.P.2d 273 (1979); and *Dentistry Board v. Blumer*, 78 Mich. App. 679, 261 N.W.2d 186 (1977).

This court in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P.2d 828 (1968), had occasion to review proceedings against Dr. Foote for unprofessional conduct. In *Foote*, we stated:

"Considering the entire policy expressed in the act, we believe the legislature, by enumerating certain acts and classifying them as unprofessional conduct, did not thereby intend to exclude all other acts or conduct in the practice of the healing arts which by common understanding render the holder of a license unfit to practice. It would indeed be difficult, not to say impractical, in carrying out the purpose of the act, for the legislature to list each and every specific act or course of conduct which might constitute such unprofessional conduct of a disqualifying nature. Nor does any such failure leave the statute subject to attack on grounds of vagueness or indefiniteness. *Our statute makes no attempt to delineate what acts are included in the terms immoral or dishonorable conduct, which are also made grounds for revocation. The determination whether by common judgment certain conduct is disqualifying is left to the sound discretion of the board.*

. . . .

"In 41 Am. Jur., Physicians and Surgeons, § 49, pp. 175-176, we find this:

'No other ground for revocation is invoked as frequently, perhaps, as "unprofessional," "dishonorable," or "immoral" conduct in connection with the practice of medicine or the particular branch or system thereof in which the licensee in question is engaged. Such conduct is specified as grounds for revocation in many of the statutes, and, as appears above, the validity of such statutes has been sustained by the courts in almost every instance. The quoted words, and other similar ones which are sometimes used in the statutes, are words of general, rather than exact and definite significance. The courts are in substantial accord, however, that they are to be construed to mean that which, by common understanding and general opinion, is considered to be grossly immoral, dishonorable, or disreputable in connection with the practice of medicine. Thus, a statute authorizing revocation for "immoral," "dishonorable" or "unprofessional" acts or conduct contemplates conduct which either shows that the person guilty of it is intellectually or morally incompetent to practice the profession or has committed an act or acts of a nature likely to jeopardize the interest of the public. . . .' " (Emphasis added) pp. 453-454.

In *Capland v. Board of Dental Examiners,* 149 Kan. 352, 87 P.2d 597 (1939), two dentists had been charged by the Board with dishonorable conduct for advertising their services in Kansas City papers. While the constitutionality of the statute (G.S. 1935, 65-1407) which provided for revocation of a license for "dishonorable conduct" was not under attack, the following language from the opinion is pertinent:

"Abstract dissertations on the subject of what constitutes dishonorable conduct are interesting but not always helpful. The decision in each case must rest upon its own peculiar facts. The term 'dishonorable' must be construed as having been used by the legislature in its generally accepted sense. Webster's New International Dictionary, first ed., defines it as follows:

'Wanting in honor; not honorable; bringing or deserving dishonor; staining the character, and lessening the reputation; shameful; disgraceful; base.'

"Soule's Dictionary of English Synonyms, Revised and Enlarged by Alfred D. Sheffield (1938), defines the word thus:

'Dishonorable. 1. Disreputable, discreditable, disgraceful, shameful, scandalous, infamous, ignominious.'

'2. Base, devoid of honor, shameless, false, false-hearted.' " p. 368.

This court has also had occasion to review the application of the term "dishonorable conduct" to specific acts of a medical or dental licensee in *Crabb v. Board of Dental Examiners,* 118 Kan. 513, 235 Pac. 829 (1925); *Winslow v. Board of Dental Examiners,* 115 Kan. 450, 223 Pac. 308 (1924); *Richardson v. Simpson,* 88 Kan. 684, 129 Pac. 1128 (1913).

In *Simpson* the term "dishonorable conduct" withstood a constitutional challenge that it was void as being too indefinite. This court stated:

"The plaintiff contends that the portion of the statute warranting the revocation of a dentist's license for 'dishonorable conduct' is unconstitutional and void, because the phrase quoted is too indefinite to be made the basis for such action. Several courts have held in accordance with that contention, the argument being that a course regarded by one person as dishonorable may not seem so to another, and there is no fixed standard by which the disagreement can be settled. . . .

"We think it is going entirely too far to say that such a provision is a nullity. Before a license to practice dentistry is issued the applicant is required to furnish proof that he is 'of good moral character.' (Gen. Stat. 1909, § 7985.) The phrase is general, but no great difficulty attends its application. . . . The evil results, the fear of which occasioned the decisions against the validity of provisions

authorizing the revocation of a practitioner's license upon general grounds, can be avoided by reasonable interpretation." 88 Kan. at 689-690.

In *Morra v. State Board of Examiners of Psychologists,* 212 Kan. 103, 510 P.2d 614 (1973), the term "wrongful actions" as a ground for revoking or suspending a license was found not to be so vague and uncertain as to require a finding that the statute (K.S.A. 74-5324[e]) was unconstitutional. This court stated:

"In the second place the respondent argues that the term 'wrongful actions' set forth in K.S.A. 74-5324(e) as a ground for revoking or suspending a license is unconstitutionally vague, that is, the term is so vague and uncertain that men of common intelligence and understanding will differ as to its meaning and application. In *Tri-State Hotel Co. v. Londerholm,* supra [195 Kan. 748, 408 P.2d 877], we said our test for measuring vagueness is 'whether the language conveys a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice.' (p. 765.)

"We believe that a member of the profession to which the act applies would have no difficulty in comprehending what the term implies so far as his conduct as a psychologist is concerned." p. 111.

We adhere to our statements in *Foote* and hold that the terms "immoral conduct" and "dishonorable conduct" are not so vague and indefinite that the statute K.S.A. 1979 Supp. 65-2836 must be declared unconstitutional. While the adoption of specific rules and regulations as authorized by K.S.A. 1979 Supp. 65-2865 might be helpful in setting forth specific acts included within the term "dishonorable conduct," no such specification could be all-inclusive, and the failure to adopt such rules and regulations does not render the statute unconstitutional. When the terms "immoral" and "dishonorable" are given their ordinary meaning as understood in common usage, we think they are sufficiently clear that persons of common intelligence and understanding can determine whether any given factual circumstance falls within the proscribed conduct.

Next, Dr. Acker contends that the Board is required to make basic findings of fact supporting its conclusion of "dishonorable conduct" and that the findings made in this case are insufficient. Dr. Acker was charged with dishonorable conduct by failing to inform and deliberately misleading patients as to his privileges to deliver babies at Wesley Medical Center. While the findings of the Board did not outline the evidence presented, the Board did find:

"4. Testimony was presented showing that the respondent misled and failed to

inform patients in regard to his ability to deliver babies at Wesley Medical Center knowing that he had no hospital privileges at any Wichita hospitals."

Detailed findings of fact and conclusions are certainly recommended and are of great help to the trial court and appellate court in reviewing administrative decisions. See *Blue Cross & Blue Shield v. Bell,* 227 Kan. 426, 607 P.2d 498 (1980). However, we have held:

"Specific findings of fact by an administrative agency are desirable in contested matters, but are not indispensable to a valid decision in the absence of a statute or rule requiring them." *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.,* 217 Kan. 546, Syl. ¶ 9, 539 P.2d 1 (1975).

In commenting upon the findings of the Board in this case, the trial judge stated:

"I do not know how much more directly the Board could make findings of fact. I grant Appellant that the Board did not specifically say in each instance what portions of the testimony of the witnesses it believed and what portions of the testimony of Dr. Acker the Board believed, but I would point out that the Board is not required to do that. The findings of fact made by the Board are like those made by any Court. Their mere statement indicates that the Board believed that testimony supporting the finding and disbelieved the testimony not supporting the finding. Courts of law are required to set out the basic facts which cause them to conclude as they do, but that requirement of Statute and Supreme Court rule is not binding upon the Board. In my opinion, the factual finding is amply made by the Board and is adequately supported by the testimony."

We agree with the trial court and are of the opinion that the findings of the Board meet the minimum requirements necessary to allow meaningful review on appeal.

Next, appellant contends that the Board's decision was fraudulent, arbitrary or capricious and was not supported by the evidence. At this point we once again state the scope of review by the district court and the appellate courts when administrative decisions are involved:

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority. (*Kansas Ass'n of Public Employees v. Public Service Employees Union,* 218 Kan. 509, Syl. ¶ 1, 544 P.2d 1389 [1976].)" *Behrmann v. Public Employees Relations Board,* 225 Kan. 435, Syl. ¶ 7, 591 P.2d 173 (1979).

Without going into detail, three former obstetrical patients of Dr. Acker testified that he affirmatively told them or led them to

believe that he had hospital privileges at Wesley and that he would personally deliver the babies. In addition, there was expert testimony concerning the personal relationship between a pregnant woman and her obstetrician and the traumatic emotional effect that might be caused a patient upon finding out at the last minute that her doctor was not going to be able to deliver her baby. While the testimony of the three patients was refuted, it would, if believed, be sufficient to support the findings of the Board and would be within the realm of dishonorable conduct. The intentional misrepresentation or misleading by a doctor to a patient of the scope of his ability and authority to practice medicine could very well be considered dishonorable conduct. The decision of the Board is substantially supported by evidence and there is no showing that the Board's action was fraudulent, arbitrary or capricious.

Appellant next complains that a two-year suspension is too severe a sanction for the misconduct of Dr. Acker. It is argued that under the statute the Board could have limited the scope of his practice and could have prohibited him from further obstetrical practice without total suspension of his right to practice medicine. While we agree that the Board could have ordered such a limitation, the suspension ordered was within the statutory authority of the Board and its imposition based upon the evidence in this record does not amount to fraudulent, arbitrary or capricious conduct. Lacking such conduct by the Board, the sanctions imposed, being within the statutory authority of the Board, will not be disturbed on appeal.

Finally, appellant urges that he should have been granted a trial de novo in district court and asks that we overrule our recent holding in *Behrmann.* We decline to do so.

We have carefully reviewed the record and considered all points raised by appellant and find them to be without merit.

The judgment is affirmed.