(616 P.2d 1084)
No. 50,735

Kansas State Board of Healing Arts, *Appellee,* v. Danial A. Burwell, D.C., *Appellant.*

Opinion filed September 12, 1980.

*Davy C. Walker,* of Kansas City, for the appellant.

*Wallace M. Buck, Jr.,* of Topeka, for the appellee.

Before Meyer, P.J., Rees and Parks, JJ.

Parks, J.: This is an appeal from the district court's judgment upholding the Kansas State Board of Healing Arts (Board) order revoking appellant's license to practice chiropractic.

This proceeding was initiated by the filing of a verified petition to the Board alleging that Danial Burwell, a licensed chiropractor, unlawfully invaded a field of practice for which he was not licensed. The acts allegedly exceeding the scope of his chiropractic license were the prescription and administration of intravenous injections of Laetrile.

The evidence presented to the Board included testimony by several people who witnessed Dr. Burwell inject intravenous doses of a substance Burwell said was vitamin B-17 or Laetrile. Donald and Judy Eidemiller testified that Robert Hopkins had a lung ailment diagnosed as cancer; that after receiving conventional treatment, Hopkins sought relief through Laetrile treatments; that Hopkins received intravenous injections from Burwell or his nurse; and that Hopkins was billed for the administration of these services. Judy also testified that she retrieved two syringes which had been discarded by Burwell in order to determine whether Hopkins was receiving Laetrile. Subsequent testimony established that the syringes contained amygdalin (Laetrile). Three nurses who attended Mr. Hopkins also testified that they saw Burwell administer intravenous injections to him. Additionally, relatives of Estell Eugene Pike and Francis Edward Howe testified that they witnessed Dr. Burwell inject the two men intravenously with a substance they understood to be Laetrile. The Board also heard testimony from several chiropractors and a pharmacist concerning the scope of chiropractic practice and whether the phrase "medicine or drugs in materia medica" encompasses Laetrile.

The Board held that Dr. Burwell unlawfully invaded a field of practice for which he was not licensed by administering drugs or medicines to patients intravenously in violation of the Healing Arts Act (K.S.A. 65-2801 et seq.), and ordered revocation of his license to practice chiropractic. The district court reviewed the Board's proceedings and held that they comported with due process requirements and were not fraudulently, arbitrarily, or capriciously carried out. The court also held that the Board's action was within its authority and substantially supported by the evidence. Appellant appeals the district court's determination to this court.

The scope of review in a license revocation proceeding was set forth in *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, Syl. ¶¶ 1, 2, 436 P.2d 828 (1968):

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.

"In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court."

Appellant contends that the Board's action was arbitrary and capricious, unsupported by the evidence and outside the scope of its authority. We turn to the latter point first and consider appellant's argument that the revocation of his license was outside the power of the Board because the statute defining the scope of chiropractic is unconstitutionally vague.

The Board of Healing Arts is a statutory creation which has authority to license and regulate all practitioners of the healing arts in this state. K.S.A. 65-2801 *et seq.* The Board may after notice and hearing revoke, suspend or limit the license of a practitioner upon proof of one of the grounds specified in K.S.A. 1979 Supp. 65-2836. These grounds include "[u]nlawful invasion of the field of practice of any branch of the healing arts in which the licensee is not licensed to practice." K.S.A. 1979 Supp. 65-2836(*i*). Furthermore, the scope of chiropractic as defined by K.S.A. 1979 Supp. 65-2871 specifically prohibits the prescription or administration of "medicine or drugs in materia medica" and the performance of any surgery or obstetrics. The threshold question for this court, then, is whether the treatment which Dr. Burwell was found to have employed as part of his practice was, as a matter of law, outside the lawful range of chiropractic.

A chiropractor may not administer or prescribe "medicine or drugs in materia medica." K.S.A. 1979 Supp. 65-2871. Several of the witnesses believed that the term materia medica referred to a multivolumed listing of medicinal substances and their properties, but only one witness had seen a copy of the books. Another witness testified that he believed the term to be obsolete, and none knew of any drug listing which included Laetrile. Appellant contends that the inability of the witnesses to agree on a meaning of the phrase indicates that the inclusion of this phrase renders the statute unconstitutionally vague and unenforceable.

When considering the validity of a statute, the court starts with a presumption of constitutionality; all doubts must be resolved in favor of validity of the statute, and before the statute may be stricken down it must clearly appear that the statute violates the constitution. *State v. Norris,* 226 Kan. 90, 92, 595 P.2d 1110 (1979). Moreover, to withstand a vagueness attack, a statute which may have criminal sanctions imposed as a result of its violation, must convey a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. *Kansas State Board of Healing Arts v. Acker,* 228 Kan. 145, Syl. ¶ 4, 612 P.2d 610 (1980). An individual who exceeds the scope of his healing arts license may be subject to criminal prosecution. K.S.A. 65-2858.

Therefore, we must determine the meaning of the prohibition against the chiropractor's use of "medicine or drugs in materia medica."

The confusion of the witnesses testifying before the Board regarding the meaning of materia medica is explained by the fact that a 19th century treatise entitled *Materia Medica Pura* included data on 61 drugs studied by the author, Samuel Hahnemann. Additionally, the California statute limiting the use of drugs by chiropractors includes the phrase materia medica (Cal. Bus. & Prof. Code § 1000-7 [West]), statutorily defined by reference to various official pharmacopoeias (Cal. Bus. & Prof. Code § 13 [West]). However, no such statutory definition has been adopted in Kansas and we must rely on the ordinary or common-use definition of the words. *Grey v. Schmidt,* 224 Kan. 375, Syl. ¶ 1, 581 P.2d 1180 (1978).

Webster's Third New International Dictionary (1976) includes the following definition of materia medica:

"1: substances used in the composition of medical remedies: DRUGS, MEDICINE 2a: a branch of medical science that treats of the sources, nature, properties, and preparation of the drugs used in medicine b: a treatise on this subject" (p. 1392.)

Thus the term materia medica as found in K.S.A. 1979 Supp. 65-2871 is synonymous with drugs or medicine, and neither limits nor expands the scope of lawful chiropractic practice. As such, the term is surplusage which may be omitted without doing violence to the intent of the legislature. See *State v. Next Door Cinema Corp.,* 225 Kan. 112, 118, 587 P.2d 326 (1978). The

remaining prohibition against administration or prescription of "medicine or drugs" is language within the common understanding of individuals regulated by the statute. Therefore, we hold that the statute is not unconstitutionally vague or indefinite.

The final question raised by appellant in his challenge to the Board's scope of authority is whether Laetrile was correctly found to be a medicine or drug. There is no statutory definition of the words "medicine or drugs" but, again, the term has an easily understood common-use meaning. Any substance used to treat, relieve or remedy a disease, condition or ailment may be called a medicine or drug. See *State v. Wilson,* 11 Wash. App. 916, 528 P.2d 279 (1974).

In this case there was substantial competent evidence that Dr. Burwell explained his use of Laetrile as treatment of the patients for cancer or accompanying pain. This use of Laetrile was properly found to be use of a medicine or drug. We are satisfied that the fact that Laetrile is extracted from apricot pits and thus could be called a food extract does not secure its lawful use by chiropractors. K.S.A. 1979 Supp. 65-2871 states that chiropractors may use food extracts but expressly prohibits administration of drugs or medicines. We hold that administration or prescription by chiropractors of a medicine or drug physically or chemically separated from a food source is within the statutory proscription.

We now turn to appellant's other contentions that the finding that Dr. Burwell did use Laetrile is unsupported by the evidence, and that he was denied procedural due process by the Board's arbitrary and capricious actions.

There was direct testimony that Dr. Burwell was seen administering tablets and injections of a substance he represented as Laetrile. Additionally, analysis of an expended syringe indicated that Laetrile was injected into the body of Robert Hopkins. Appellant complains that much of the testimony was inadmissible hearsay, but it should be remembered that liberality is allowed in the taking of testimony and the admission of evidence in proceedings before administrative boards, and that such agencies are not bound by strict and technical rules of evidence or procedure. *Morra v. State Board of Examiners of Psychologists,* 212 Kan. 103, Syl. ¶ 3, 510 P.2d 614 (1973). Considering all the testimony, there was certainly substantial evidence that Burwell administered Laetrile to several patients.

Appellant claims he was denied procedural due process, alleging that the Board was prejudiced against him and biased against the use of Laetrile in general. The fundamental requisites of due process are notice and an opportunity for a full and complete hearing. *Copeland v. Kansas State Board of Examiners in Optometry,* 213 Kan. 741, 749, 518 P.2d 377 (1974). Appellant was given effective notice of the hearing and was represented by counsel. A motion for continuance made just two days before the hearing date was denied. Such a denial is discretionary with the Board and does not evidence prejudice, since appellant had in excess of 30 days notice and the Board had subpoenaed several witnesses. Furthermore, the fact that the properties of Laetrile were discussed at the hearing was not inappropriate since it was important under the Healing Arts Act to determine whether the substance administered by appellant was a medicine or a drug.

Finally, appellant contends that the severity of the sanction of license revocation imposed by the Board evidences prejudice and an abuse of discretion. While we agree that the sanction imposed by the Board is very harsh, the revocation order is within the statutory authority of the Board and its imposition based on the evidence in this record does not appear to be fraudulent, arbitrary or capricious conduct. *Kansas State Board of Healing Arts v. Acker,* 228 Kan. at 154.

Affirmed.