DONALD M. MEDLEY, Plaintiff-Appellant, v. THE DEPARTMENT OF INSURANCE, Defendant-Appellee.

Fourth District   No. 4—91—0371

Opinion filed January 17, 1992.

William F. Trapp and Terry D. Charlton, both of Brown, Hay & Stephens, of Springfield, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Claudia E. Sainsot, Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On May 22, 1989, Zack Stamp, Director of defendant Illinois Department of Insurance (Department), issued an order revoking the Illinois insurance producer's license of plaintiff Donald M. Medley. Plaintiff then requested and received a hearing before a hearing officer. On August 1, 1990, acting on behalf of the Department, Stamp issued an order approving the hearing officer's recommendation revoking plaintiff's license for a period of three years from that date. Plaintiff filed a complaint for administrative review in the circuit court of Champaign County on August 30, 1990. On May 24, 1991, that court en-

tered an order affirming the decision of the hearing officer. Plaintiff has filed a timely notice of appeal. We affirm.

Section 494.1 of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1989, ch. 73, par. 1065.41—1) authorizes the Director of the Department to issue licenses to insurance producers as defined by section 491.1(b) of the Code (Ill. Rev. Stat. 1989, ch. 73, par. 1065.38—1(b)). Section 505.1(a)(7) of the Code authorizes the suspension or revocation of such a license if the licensee "has been, within the past 3 years, convicted of a felony, unless the individual demonstrates to the Director sufficient rehabilitation to warrant the public trust." (Ill. Rev. Stat. 1989, ch. 73, par. 1065.52—1(a)(7).) The record here conclusively showed that on September 16, 1988, plaintiff pleaded guilty in the United States District Court for the Southern District of Illinois to one count of a criminal conspiracy (18 U.S.C. §§2, 371 (1988)) and one count of aiding and abetting a currency transfer of over $10,000 without reporting the transfer to the Secretary of the Treasury (31 U.S.C. §§5313, 5322 (1988)). Both offenses are felonies.

On appeal to this court, plaintiff maintains (1) the administrative decision to revoke his license was against the manifest weight of the evidence, and (2) the standard for revocation set forth in section 505.1(a)(7) of the Code denies the licensee of due process because it is vague and uncertain. In arguing the manifest weight issue, plaintiff complains that the hearing officer, whose report was adopted by the Director, ignored or failed to acknowledge testimony favorable to plaintiff, thus acting in an arbitrary and capricious manner. Under the heading of the sufficiency of the evidence, plaintiff also complains the hearing officer should not have sustained an objection to his *pro se* closing argument in which he recited matters not in evidence.

According to information presented to the hearing officer, plaintiff had been licensed as an insurance producer since 1964. Such a person is one who "solicits, negotiates, effects, procures, renews, continues or binds policies of insurance covering property or risks located in Illinois." (Ill. Rev. Stat. 1989, ch. 73, par. 1065.38—1(b).) Plaintiff was employed by an insurance agency and was a director and controlling shareholder in a bank. His crimes arose from his latter activities. According to his own admission, a physician who was a friend of his asked him about obtaining a Swiss bank account in 1987. The friend indicated he had approximately $125,000 he wished to loan out in a cash transaction. Legal counsel advised that such a cash transaction without proper reporting would be illegal. A transaction was then arranged whereby the physician made application to plaintiff's bank for a $150,000 loan, which was granted. The physician then left the

$125,000 in cash in a vault box in plaintiff's bank as collateral for the bank loan. The box was listed in the name of plaintiff's mother. The proceeds of the $150,000 loan were then lent to participants in a coal-mining operation under an agreement whereby plaintiff received a royalty of 30 cents per ton on coal recovered during the operation. When the loan was repaid, the signature card on the lockbox where the cash was kept was destroyed.

Plaintiff appeared before the hearing officer without counsel. He called four witnesses. The problem with their testimony in regard to plaintiff's burden to show "sufficient *rehabilitation* to warrant the public trust" (emphasis added) (Ill. Rev. Stat. 1989, ch. 73, par. 1065.52—1(a)(7)) was that the witnesses indicated plaintiff had always been a trustworthy person. They did not focus on ways in which he had changed since committing those offenses. Plaintiff's wife testified plaintiff had always been honest and had pleaded guilty to avoid indictments against her and her son. A senior vice-president for plaintiff's employer testified plaintiff had the respect of people in the area and they felt he had received a "raw deal." This vice-president's wife, an associate professor at Southern Illinois University, testified she had respect for plaintiff and his wife and confidence in dealing with them. The final witness was national sales director for plaintiff's employer. He did say he thought plaintiff was rehabilitated and had the trust of the community, but he described plaintiff's crime as a "technical banking violation" which was not related to his selling of insurance.

Plaintiff testified on his own behalf. He stated he was unaware of any illegality in what he had done. He further stated, "I am convinced that I committed a crime because the book says so and *** I'm not going to build the rest of my life on false pretenses that we didn't do something wrong." He maintained he was pressured to plead guilty and did not think he was right in doing so. However, he accepted responsibility based upon the fact of his leadership in the bank. He stated "[t]he buck stops here." His statement he was not going to go through life contending he did nothing wrong was commendable, but he did not appear contrite and did not indicate any way in which he intended to change. Thus, he neither indicated any need to do anything to rehabilitate himself nor gave any indication he would do anything to bring about rehabilitation.

■ An administrative decision will not be overturned on judicial review on the basis of the weight of the evidence unless that decision is contrary to the manifest weight of the evidence. (*City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 554 N.E.2d 155.) Such was not the case here. We recognize that plaintiff

may well have always been a person of repute in the community and had generally been fair and honest in his dealings with others. Here, he had been advised that the proposed transaction was likely illegal and must have recognized that the owner of the $125,000 in cash was illegally attempting to avoid paying State and Federal income taxes incurred in acquiring the money or acquiring interest thereon. The hearing officer and the Director could properly have concluded that defendant was taking the position that what he did was only technically wrong and that any remorse he had arose only because he had been caught. They could have concluded he would be likely to again attempt to do something of a similar nature if he felt he could do so without being caught and punished.

■■ Plaintiff complains that the report of the hearing officer ignored such items of evidence as (1) those concerning his desire to improve his life so that he can provide for his employees; (2) his activities in church, the Masonic order, and the American Legion; and (3) the willingness of his employer to continue to employ him. Plaintiff presents no authority to support his theory that the failure of the hearing officer to detail these matters in her report indicates they were ignored. Moreover, as we have previously indicated, much of this evidence goes to show defendant's general good conduct prior to the offense rather than any rehabilitation.

We recognize the difficulty encountered by a person, even a sophisticated business man, who appears *pro se* in a matter of this nature. However, that was plaintiff's choice. He was not immune from the rules necessary for orderly procedure. The hearing officer properly refused to let plaintiff make argument concerning matters he had failed to present in evidence. She was not required, as plaintiff now suggests, to allow him to open the evidence to present a basis for his argument.

Finally, we turn to plaintiff's contention that section 505.1(a)(7) of the Code sets forth standards for revocation of licenses for insurance providers which are too vague and uncertain to meet constitutional muster. He correctly points out that when the General Assembly vests discretionary authority in administrative officers, intelligible standards must be provided to aid the officers in their exercise of that discretion. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223.) Plaintiff maintains here that standards are lacking as to (1) the nature of the offense involved, and (2) the circumstances surrounding the offense or the rehabilitation demonstrated after conviction.

In complaining of the vagueness of section 505.1(a)(7) of the Code, plaintiff places substantial reliance upon *Chicagoland Agencies, Inc. v. Palmer* (1936), 364 Ill. 13, 15, 2 N.E.2d 910, 911. There the supreme court found section 11 of " 'An act providing for the qualification and license of insurance brokers and solicitors ***' " was invalid because it permitted the Director of Insurance to revoke licenses issued under that act for certain stated types of misconduct when the Director had made a determination of the existence of that misconduct "after due investigation and a hearing." (Ill. Rev. Stat. 1935, ch. 73, par. 573.) The indefinite nature of the procedure to be followed before revoking a license required the supreme court to hold the statutory provision void for vagueness.

Here, no question arises concerning the procedure involved in the revocation. That is set forth in detail in section 506.1 of the Code. (Ill. Rev. Stat. 1989, ch. 73, par. 1065.53—1.) Nor is the nature of the misconduct giving rise to revocation vaguely described. Plaintiff calls our attention to the case of *Fisher v. State Insurance Board* (1929), 139 Okla. 92, 93, 281 P. 300, 301, wherein a statutory provision purporting to allow revocation of licenses to sell insurance for " 'other bad practices' " was held to be too vague and indefinite. Here, section 505.1(a)(7) of the Code makes clear that the misconduct upon which a revocation is based is the conviction of a felony within the prior three years. A statute authorizing the revocation of the licenses of physicians by the State of New York for any criminal conviction was held to meet the requirements of due process in *Barsky v. Board of Regents* (1954), 347 U.S. 442, 448, 98 L. Ed. 829, 838, 74 S. Ct. 650, 654.

■ The closest question concerning vagueness of section 505.1(a)(7) of the Code arises from the language which negates revocation of the license if "the individual demonstrates to the Director sufficient rehabilitation to warrant the public trust." "An impossible standard of preciseness of language and expression cannot be required; it is enough that the law's language and meaning are sufficiently definite when measured by common understanding and practices." (*People v. Capitol News, Inc.* (1990), 137 Ill. 2d 162, 171, 560 N.E.2d 303, 307, *cert. denied* (1991), 498 U.S. 1120, 112 L. Ed. 2d 1180, 111 S. Ct. 1075.) The word "rehabilitation" is commonly understood. When that "rehabilitation" is required to be sufficient "to warrant the public trust" the language is less clear. However, here the language is used in the context of determining who should have a license to provide insurance. The type of rehabilitation required here is such that the licensee can be trusted to engage in selling and securing

of insurance policies which may be intricate and may involve insureds or prospective insureds who lack sophistication in such matters. When considered in this context, the questioned language is "sufficiently definite when measured by common understanding and practices." *Capitol News, Inc.*, 137 Ill. 2d at 171, 560 N.E.2d at 307.

Thus, the language of section 505.1(a)(7) of the Code meets constitutional due process requirements, and the Director's determination that plaintiff's license be revoked for a period of three years was not contrary to the manifest weight of the evidence. Accordingly, we affirm the judgment of the circuit court upholding the decision of the Director.

Affirmed.

COOK and LUND, JJ., concur.