# FISHER v. STATE INSURANCE BOARD.

No. 20311. Opinion Filed Oct. 15, 1929.

Cheek & McRill, for petitioner.

Edwin Dabney, Atty. Gen., and Fred Hansen, for respondents.

LESTER, V. C. J. This is a proceeding in this court on a certiorari order presenting for review the determination by the State Insurance Board with reference to charges against the petitioner.

The petitioner has been a fire insurance agent for a period of about 20 years, with his place of business located at Shawnee, Okla. A complaint was filed by one J. P. Jones, before the State Insurance Board of Oklahoma, alleging certain acts of misconduct of the petitioner as an insurance agent.

The petitioner was found guilty and his license to write insurance was canceled by the State Insurance Board under a construction that was given to a certain portion of paragraph (C) of section 6749, C. O. S. 1921, which provides:

"It is provided further that the State Insurance Board shall only cancel any license issued by it after a hearing before the said State Insurance Board, on charges made in writing and after a copy of said charges have been mailed to the said agent at his last known address and giving him ten days' notice for appearance. Charges as filed must set forth some violation of the insurance laws of this state, or that the agent has through his said agency defrauded some policy holder or that he lacks sufficient ability to properly conduct the business of insurance or that he is incompetent or has made use of misrepresentations, twisting or

other bad practices in the conduct of his insurance business, after such hearing of the charges made, the State Insurance Board shall render its opinion in writing, and if it deems the charges sufficiently proven to be true, shall forthwith cancel the said license and shall notify the said agent and the said company of its findings. * * *"

The order of the State Insurance Board canceling the license of the petitioner reads in part as follows:

"The State Insurance Board is of the opinion that such methods of intimidation and coercion, practiced by the defendant, comes within the meaning of 'or other bad practices,' as mentioned in subsection (c) of section 6749, C. O. S. 1921. It is also the opinion of the State Insurance Board that the defendant is operating his agency in such a way that in view of section 6750, C. O. S. 1921, he is not entitled to an insurance agency license."

It will be noticed that the board in its order of revocation made reference to section 6750, C. O. S. 1921, and announced that under the evidence the petitioner was not entitled to an insurance agency license.

Owing to the fact that the proceeding before the Insurance Board was for the purpose of canceling the license of the petitioner, and not an application for a license, we shall discuss only that part of the proceeding which attempted to revoke and cancel the license theretofore issued by the board to the petitioner.

The sole and only question before the Insurance Board was whether or not the license of the petitioner should be canceled or revoked.

Section 6750, C. O. S. 1921, was not involved, for the reason that it refers to an ineligible applicant, and the ineligibility therein mentioned is not made a ground of revocation of one's license.

The petitioner attacks the order of revocation on the ground that it is based on that part of the enumerated causes of revocation by the use of the words "or other bad practices."

The petitioner asserts that the statute placing the authority in the State Insurance Board to cancel a license once issued is penal in its nature and that the cause for which a license may be revoked should be reasonably definite and certain.

The substance of the complaint in the instant case charged that the petitioner "was using his license principally for writing insurance on property on which he had

an interest and under his control, and as an officer of the Home Building & Loan Association of Shawnee he intimidated prospective borrowers, in that the petitioner refused to accept policies written by competitive insurance agencies."

On a hearing had before the State Insurance Board, there was some evidence tending to sustain the allegations of the complaint.

The Insurance Board found that the conduct of the petitioner comes within the meaning of "or other bad practices as mentioned in subsection (C) of section 6749."

The authority of the State Insurance Board to license and its power to revoke license once issued are separate and independent proceedings under the statutes of this state.

We think that it must be conceded that where a statute authorizes the cancellation of a license, the causes for revocation must be reasonably definite and certain, and that the character of the acts constituting the necessary elements that would justify revocation must be stated and charged with reasonable certainty.

That part of the statute relied upon by the Insurance Board as its authority for revocation of the petitioner's license providing, "or other bad practices." is here challenged by the petitioner as being entirely indefinite and uncertain, and therefore null and void.

It is our judgment that the statutes of this nature should use a standard yard stick by which to measure prohibited acts and conduct. It should not leave it to the discretion of boards as to where a prohibited line of conduct may be established.

To an allegation of "bad practices" men may materially differ as to what conduct may or may not constitute "bad practices." It is a well-known fact that men differ on the ethics of trade and professions, and an insurance board composed of men of probity and with a high degree of intelligence might consider a certain line of practice entirely ethical and honorable, while a board composed of different personalities, who are just as honorable and intelligent, would construe the same course of conduct in an entirely different way.

The duration of license should not be dependent upon the interpretation that may be made by a change in the personnel of the Insurance Board.

In Matthews v. Murphy (Ky.) 63 S. W. 785, the Court of Appeals of that state held a statute void for uncertainty which authorized the State Board of Health to revoke the license of a physician for grossly unprofessional conduct of a character likely to deceive or defraud the public. The court there said:

"The statute does not prescribe the manner by which a physician may regulate his conduct. It does not advise him in advance what act or acts may be in violation of its provisions. He is not told what is lawful or unlawful. He might do an act which he regarded as entirely proper, which neither violated moral law nor involved turpitude, still such acts might, in the opinion of the State Board of Health, amount to unprofessional conduct, and which, in its opinion, did or was calculated to deceive or defraud the public. The physician who did the act of which complaint was made before the State Board of Health could not know at the time the act was done what standard would be thereafter erected by the board by which its effect was to be determined. As the statute does not advise him beforehand as to what is unprofessional conduct, he could not knowingly or intentionally be guilty of it. The Legislature, in effect, has attempted to commit to the State Board of Health the right, after the physician has done some act, to determine what its effect is to be, and, if in its judgment he should be deprived of the right to practice his profession, it can inflict the punishment upon him by revoking his license. If the Legislature desires to declare for what acts or conduct a physician's license to practice medicine shall be revoked, it is competent to do so, and to vest in some tribunal the authority to investigate and try the charge which may be made under such a statute."

The case of Green v. Blanchard (Ark.) 211 S. W. 375, involved an act granting the Board of Dental Examiners right to grant or revoke licenses, which provides that a license might be revoked in case of "the publication or the circulation of any fraudulent or misleading statement as to the skill or method of any person or operator." The court in that case said:

"It (the language of the statute) does not advise the dentist in advance of what act or acts may be in violation of its provisions. Subdivision 2 and the words, 'deceiving or defrauding the public,' have no common-law definition. They are not defined in the statute and have no generally well-defined meaning in the decisions of courts. Under the statute, a dentist might do an act neither violating moral law nor involving moral turpitude and which he regarded as strictly proper, and still his acts might, in the opinion of the board, be such as were calculated to deceive or defraud the public. Different standards might be established by different boards. It is well known that the different schools of medicine and even of dentistry have widely divergent views as to the treatment of certain diseases. It must be remembered that the statute doesn't prohibit advertising, however unprofessional or unethical we might consider that to be. It only prohibits advertising with the view of 'deceiving or defrauding the public or in any way that would tend to deceive the public.' So the members of one school of medicine or dentistry might advocate a certain treatment and in good faith advertise it to the public which might be condemned by members of another school as calculated to deceive and defraud the public. The members of the profession are usually men of intelligence and good citizens. We do not believe that they would be guilty of such a multiplicity of wrongful acts that their conduct could not be safely regulated by a specific legislative enactment.

"It is competent for the Legislature to declare for what acts or conduct a license may be revoked and to vest in the state boards the authority to investigate and try the charges which may be made under such a statute; but the statute should specifically name or designate the offenses or wrongful acts which shall constitute a cause for revoking his license, so that the dentist may know in advance whether he has violated the terms of the statute."

There is another fatal objection, however, to that part of the involved statute upon which the license of the petitioner was revoked.

In the case of City of Tulsa v. Clark, 119 Okla. 122, 249 Pac. 286, this court said in construing certain language to be found in section 7 of article 18 of the Constitution:

"The phrase 'or other use of the streets' cannot be given any broader meaning and application than the particular words and phrases preceding the general phrase. The general words are merely descriptive of the subject-matter preceding, and do not expound the meaning of the particular words."

In the case of State ex rel. Spriggs v. Robinson (Mo.) 161 S. W. 1169, that court used the following language:

"There is a well-recognized rule that where a law specifically designates several matters or things which shall be governed by its provisions, and then by general language undertakes to include other acts and things not specifically named, such law must be so construed as to apply only to things or acts of the same general nature as those definitely set out."

We think the phrase "or other bad prac-

tices" must be construed to be descriptive of the subject-matter preceding the use of said phrase, and the petitioner not having been charged with acts or conduct of the enumerated causes for canceling an insurance license, his license could not be revoked thereunder.

It cannot be said that the phrase, to wit, "or other bad practices," can be held as a sufficient definition as a cause for the cancellation of one's license.

It follows that the action of the State Insurance Board was without authority to cancel said license, and said revocation is, therefore, a nullity.

For the reasons herein set out, it is the judgment and decree of this court that the order of the State Insurance Board made on the 17th day of April, 1929, canceling and revoking the license of the petitioner to engage in the writing of fire insurance be declared null and void, and that the same be set aside and held for naught.

MASON, C. J., concurs in conclusion. CLARK, HEFNER, SWINDALL, and ANDREWS, JJ., concur. HUNT, J., dissents. RILEY and CULLISON, JJ., absent.

Note.—See "Insurance," 32C.J. § 35, p. 1000, n. 83.