## MOORE v. VINCENT et al.

No. 25315.    Sept. 10, 1935.

Rehearing Denied Oct. 29, 1935.

Lawrence Mills, R. M. Cohen, and William M. Taylor, for plaintiff in error.

Cook & Bingaman, for defendant in error.

PER CURIAM. This action was filed in the district court of Okmulgee county, Okla., by William M. Moore, as plaintiff, versus Ernest E. Vincent, Ben V. Hunter, and B. H. Rackley, as the Oklahoma State Board of Embalming, and in this opinion they will be respectively referred to as plaintiff and defendants. The action was brought to procure a prohibition against the defendants from proceeding with a hearing to determine whether the license of the plaintiff as a licensed embalmer under the laws of Oklahoma should be revoked. The facts are few and admitted.

William M. Moore was, on and before the 12th day of May, 1933, a regularly licensed embalmer under the laws of Oklahoma, and on said day had in his employ one Ray Duvall, an unlicensed embalmer, and sent Ray Duvall to Okmulgee to receive the body of one Cecil Hubbard who had died from spinal meningitis, and, after receiving said body, to embalm the same, and Ray Duvall, acting under the authority of said employment, did receive and embalm said dead body. These facts coming to the knowledge of the defendants, they served notice on the plaintiff that such acts violated its rules and justified the revocation of his license as an embalmer, and that it would proceed to investigate the matters set out in said notice on the 25th day of August, 1933, for the purpose of determining whether it should cancel the license of plaintiff as an embalmer. The above facts are the sole facts stated in such notice which were to be investigated, and, if found true, might result in the revocation of plaintiff's embalmer's license.

This action was commenced after the service of said notice, and the defendants filed their answer substantially admitting the facts stated in plaintiff's petition, and in addition setting up that the district court had no jurisdiction of the cause because exclusive jurisdiction thereof had been vested by the Constitution and laws of Oklahoma in the Supreme Court.

The cause came on for hearing on the 5th day of September, 1933. On the hearing the above facts were admitted, and in addition thereto the notice served on plaintiff was admitted and the rules of the State Board of Embalming were admitted. On the hearing the trial court rendered judgment setting aside a temporary prohibition theretofore issued, denying a permanent prohibition, and dismissing plaintiff's petition. Plaintiff excepted to the judgment of the trial court, perfected his case-made within the time allowed by the trial court, and lodged his appeal in this court in the time allowed by law.

Plaintiff presents three assignments of error, all of which are substantially the same and raised the question that the court erred in refusing the writ of prohibition, in discharging the alternative writ of prohibition, and in rendering judgment for the defendants. Plaintiff contends that said assignments of error should be sustained on the ground: (a) That the State Board of Embalming had no authority under the laws of the state of Oklahoma to revoke the license of the plaintiff; and (b) that if said board had authority under its rules and regulations, it could only be revoked under its rules upon the filing of an affidavit with the board setting up some acts which constituted a violation of the rules.

The State Board of Embalming being the creature of statute, its power and jurisdiction is derived from the statute creating it. It is, therefore, necessary to determine what powers are granted to the board. The statute creating the board and defining its powers does not expressly give the board any power to revoke licenses. It does not expressly provide for the revocation of licenses, nor does it prescribe the acts which will be the occasion for the revocation of licenses; so the power to revoke licenses, if it exists, is implicit and not explicit. The only portion of the statutes of Oklahoma by which such implicit power can be conferred is section 4403, Okla. Stats. 1931. The part of said section which is applicable here is as follows:

"The said board shall from time to time adopt rules, regulations and by-laws not inconsistent with the laws of this state or of the United States, whereby the performance of the duties of said board and the practice of embalming dead bodies and the conduct of schools for teaching embalming shall be regulated."

The power of the board to revoke licenses under this section, if it exists at all, exists under the power to make rules and regulations and in such rules provide for the revocation of licenses.

Where it is necessary to procure a license in order to carry on a chosen profession or business, the power to revoke a license, once granted, and thus destroy in a measure the means of livelihood, is penal, and therefore

should be strictly construed. Green v. Blanchard, 138 Ark. 137, 211 S. W. 375, 5 A. L. R. 84; Abrams v. Jones, 35 Idaho, 532, 207 P. 724; State ex rel. v. Robinson, 253 Mo. 271, 161 S. W. 1169; State ex rel. v. Clark, 288 Mo. 659, 232 S. W. 1031; State of Wisconsin ex rel. E. J. Adams v. R. J. Burdge, 95 Wis. 390, 70 N. W. 347, 37 L. R. A. 157; Fisher v. State Insurance Board, 139 Okla. 92, 281 P. 300. Plaintiff, relying on this rule of law, contends that the power given by the section does not authorize the Board of Embalming to cancel his license or to adopt rules for such purpose, and that in order for the board to have such power, the power must be expressly granted and the grounds thereof explicitly stated. There is considerable respectable authority supporting plaintiff's contention, and it is reinforced by the fact that in acts creating boards the Legislature has generally expressly granted the power of revocation of licenses or certificates, and prescribed the grounds and manner of revocation, as in case of accountants, barbers, dentists, architects, graduate nurses, physicians, optometrists, osteopaths, pharmacists, veterinarians, etc.

Conceding, without deciding, that the section gives the board power to adopt rules providing for the revocation of licenses, we turn to such rules for the purpose of determining their validity, and of seeing if the acts which plaintiff committed are prohibited by said rules and made grounds for revocation of license.

Are the acts committed by plaintiff prohibited by defendant's rules and made grounds for the revocation of licenses? Rule 8 adopted by the board provides for the revocation of licenses where a false affidavit is made on the application for license, or for any false statement or affidavits made by the applicant for a license. There are other rules making the failure to attend a course of lectures and demonstrations for three years, etc., grounds for revocation, but none of these apply here. The only rules adopted by the board that can be made a ground for revocation of license under the facts herein stated are rules 9 and 13 of the board. Rule 9 is as follows:

"Any licensed embalmer of the state of Oklahoma or the agent or representative thereof who pays or causes to be paid directly or indirectly any sum of money or other valuable consideration to anyone, for securing business to be brought to said licensed embalmer, or for any other unprofessional or disorderly conduct, or for the willful violation of the rules of the State Board of Embalming, shall, upon conviction before any court, be deemed to be guilty of unprofessional conduct, irregular and unethical practices, and said Oklahoma State Board of Embalming shall revoke the license of the person or persons so doing."

This rule does not mention or cover any of the acts committed by plaintiff and has no application, because there must be a conviction before a court before proceedings for revocation of license can be had under such rule.

Rule 13 of the board covering revocation of license, in so far as material, is as follows:

"Whenever the State Board of Embalming shall have reason to believe that any person to whom a license has been issued has become unfitted to practice embalming and disinfecting, or whenever a written complaint of a licensed embalmer, substantiated by affidavit thereto, charging the holder of an embalmer's license with the violation of the rules and regulations pertaining to embalming, is filed with said board, it shall be the duty of the State Board of Embalming to notify the person in question that it has reason to believe that he has been violating the law, or that he has violated the rules and regulations of said board, which notice shall be served upon him either by registered mail or personal service: Provided, that when a written complaint against any such person is filed with the board, either by a member thereof or a licensed embalmer, a copy thereof shall be attached to the notice so served upon such person."

This rule provides for two methods of proceeding to revoke licenses. One is where the board has reason to believe that a person to whom it has issued a license has become unfitted to practice embalming and disinfecting, or where a written complaint of a licensed embalmer substantiated by affidavit charges the holder of an embalming license with violation of the rules and regulations pertaining to embalming is filed with the board, in which event a copy of the written complaint is attached to the notice to be served under such rule. Neither the act creating the Board of Embalming nor the rules and regulations adopted by that board prohibit a licensed embalmer to employ a person as an assistant who is not a licensed embalmer, nor to have such unlicensed assistant embalm dead bodies under the order and direction of the licensed embalmer.

Conceding, but not deciding, the power of the board to adopt rules providing for the

revocation of licenses, do rules 9 and 13 empower the board to revoke a license except for the specified and particularized acts set out in the rules? Can the rules give the board power to revoke a license in terms so general as to leave the acts on the commission of which the board may revoke a license resting in the discretion of the board and without disclosing in advance to a licensee the grounds on which his license may be revoked? To make unspecified and unforbidden acts ground for revocation of licenses would be to invest an administrative board with unregulated power of revocation, and therefore with unregulated power to destroy existing business. Such power is opposed to the genius of a free people and repugnant to orderly constitutional government. Whatever may be the law in this regard in other jurisdictions, the question seems to be concluded in this state.

In Fisher v. State Insurance Board, 139 Okla. 92, 281 P. 300, the question arose as to revoking the license of an insurance agent. The agent was found guilty of the misconduct charged and his license revoked under paragraph (c) of section 6749, C. O. S. 1921, being section 10542 (c), Okla. Stats. 1931. Such section, after setting out other grounds for cancellation or revocation, contains the words, "or other bad practices in the conduct of his insurance business." On the hearing the Insurance Board found that the conduct of the agent complained of came within the meaning of "or other bad practices," as mentioned in subsection (c) of section 6749. The order of the State Insurance Board was declared null and void and the same ordered to be set aside. In passing on the question, this court, on page 93 of Okla. Reports, says:

"We think that it must be conceded that, where a statute authorizes the cancellation of a license, the causes for revocation must be reasonably definite and certain, and that the character of the acts constituting the necessary elements that would justify revocation must be stated and charged with reasonable certainty.

"That part of the statute relied upon by the insurance board as its authority for revocation of the petitioner's license providing, 'or other bad practices,' is here challenged by the petitioner as being entirely indefinite and uncertain, and therefore null and void. It is our judgment that the statutes of this nature should use a standard yardstick by which to measure prohibited acts and conduct. It should not leave it to the discretion of boards as to where a prohibited line of conduct may be established.

"To an allegation of 'bad practices' men may materially differ as to what conduct may or may not constitute 'bad practices.' It is a well-known fact that men differ on the ethics of trade and professions, and an insurance board composed of men of probity and with a high degree of intelligence might consider a certain line of practice entirely ethical and honorable, while a board composed of different personalities, who are just as honorable and intelligent, would construe the same course of conduct in an entirely different way.

"The duration of license should not be dependent upon the interpretation that may be made by a change in the personnel of the insurance board."

In such opinion this court quotes with approval from Mathews et al. v. Murphy (Ky.) 63 S. W. 785, 54 L. R. A. 415, and the case of Green v. Blanchard, 138 Ark. 137, 211 S. W. 375, 5 A. L. R. 84. To the authorities cited in the opinion as sustaining this court, there may be added the cases of Czarra v. Board of Medical Supervisors of the District of Columbia, 25 App. D. C. 443; State ex rel. Spriggs v. Robinson et al., 253 Mo. 271, 161 S. W. 1169; State of Wisconsin ex rel. Adams v. R. J. Burdge, 95 Wis. 390, 70 N. W. 347, 37 L. R. A. 157; People ex rel. Gamber v. Sholem, 294 Ill. 204, 128 N. E. 377; Kenyon et al. v. Moore, 287 Ill. 233, 122 N. E. 548; Winslow v. Fleischner et al., 112 Ore. 23, 228 P. 101; Welch, Ins. Com'r, v. Maryland Casualty Co. et al., 47 Okla. 293, 147 P. 1046, and cases cited therein.

It is evident that if a statute cannot confer on the State Insurance Board authority to revoke a license for "other bad practices," the rules of the Embalming Board cannot confer on that body power to revoke a license for "any other unprofessional or disorderly conduct," or when the board "has reason to believe that any person to whom a license has been issued has become unfitted to practice embalming or disinfecting." If it be answered that the language in rule 9, "or any other unprofessional or disorderly conduct," etc., is sufficient to justify revocation without a conviction in court as provided by said rule, yet it follows certain specified acts in rule 9, and under the rule declared in Fisher v. State Insurance Board, supra, would mean acts of the same general character as preceding specific acts set out in the rule.

The defendants rely upon the case of Miller v. Johnson, 110 Kan. 135, 202 P. 619. The Kansas statute is much stronger than the Oklahoma statute, and Miller v. Johnson

was decided December 10, 1921. Fisher v. State Insurance Board, supra, was decided October 15, 1929, about eight years after the Miller Case, and was doubtless decided with knowledge of such case. The cases of State v. Milwaukee, 140 Wis. 38, 121 N. W. 658; Child v. Bemus, 17 R. I. 230, 21 Atl. 539; Metropolitan Milk Co. v. City of New York, 98 N. Y. S. 895, are cited as supporting the Kansas case and as being against the conclusion to which we have arrived. We do not think the cases are in point, as they are based on statutes, ordinances, or regulations giving much more power than do the statutes and rules here under review; but, however this may be, the contrary rule has been in force in this state for about eight years, and the cases cited do not justify our departure from the law as established in this jurisdiction and in overruling well-considered cases.

It is our conclusion that if the defendant has power to adopt rules providing for the revocation of licenses, such rules to be valid must specify the acts constituting the basis or cause of revocation with such reasonable clarity and particularity as to enable a licensee to determine in advance of his acts whether or not they will violate the rules and be capable of becoming the basis of a proceeding for the revocation of his license. In so far as the rules of the defendant fail in this regard, they are void, and defendant is not authorized to proceed under the general and indefinite power of revocation contained in them, as such indefinite powers can in law confer no jurisdiction to revoke licenses. The acts of plaintiff, for the commission of which revocation of his license is sought, are, as said above, not forbidden by defendant's rules, and, if covered thereby, are only covered by that part of the rules which undertake to give the defendant uncontrolled power of revocation save as such power may be limited by its discretion. So the defendant, in prosecuting proceedings looking to the revocation of plaintiff's license, is acting without the orbit of its jurisdiction and is attempting the exercise of unauthorized judicial force.

It is, however, contended that the district court of Okmulgee county was without jurisdiction to issue writs of prohibition against the defendants. Under section 10 of article 7 of the Constitution of the state of Oklahoma, the district courts are granted original jurisdiction of all cases except where exclusive jurisdiction is by the Constitution or laws conferred on some other court, and, among the powers granted to the district courts or judges, is the power to issue writs of prohibition. Exclusive jurisdiction has not been conferred by the Constitution on the Supreme Court in regard to proceedings by or against the State Board of Embalming.

It is further urged that prohibition was not plaintiff's proper remedy, as prohibition does not lie where there is another remedy. However, for an existing remedy to preclude a resort to prohibition, such remedy must be equally as efficient and adequate as prohibition. Oklahoma City v. Corporation Commission, 80 Okla. 194, 195 P. 498; A., T. & S. F. Co. v. Love, 29 Okla. 738, 119 P. 207; City of Tulsa et al. v. Corporation Commission et al., 96 Okla. 180, 221 P. 1000.

It follows that the judgment of the district court of Okmulgee county should be reversed, with directions to grant the prohibition prayed for, and it is so ordered.

The Supreme Court acknowledges the aid of Attorneys James B. Diggs, W. J. Donohue, and E. J. Doerner in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Diggs and approved by Mr. Donohue and Mr. Doerner, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.