1998 OK CIV APP 36

**STATE of Oklahoma, ex rel. OKLAHOMA STATE BOARD OF MEDICAL LICENSURE AND SUPERVISION, Plaintiff/Appellee,**

v.

**Terrence E. MURPHY, M.D., Medical License No. 14919, Defendant/Appellant.**

**No. 88160.**

Court of Civil Appeals of Oklahoma, Division No. 3.

April 13, 1998.

---

Stanley M. Ward, Maribob L. Lee, and Patrick J. Chesley, Norman, for Defendant/Appellant.

Danny K. Shadid and Robert Trent Pipes, Shadid & Pipes, Oklahoma City, for Plaintiff/Appellee.

## MEMORANDUM OPINION

ADAMS, Judge.

¶ 1 Defendant/Appellant Terrence Murphy (Physician) appeals the revocation of his license to practice medicine in the State of Oklahoma. The Oklahoma State Board of Licensure and Supervision (Board) based that revocation upon findings that he had engaged in unprofessional conduct as alleged in two counts of a six count complaint by aiding and abetting the practice of medicine without a license and by prescribing medication without a medical need, over prescribing medications, and/or engaging in indiscriminate or excessive prescribing in violation of 59 O.S.1991 §§ 509(15) and (17), and Oklahoma Administrative Code

§§ 435.10–7–4(2), (6), (15), and (21).[1] Physician argues that the evidence presented did not meet the requisite standard for revocation of a license to practice medicine.

¶2 Constitutional due process requires a high burden of proof in disciplinary proceedings against a person holding a professional license because such proceedings involve the possible loss of a constitutionally protected property right, the loss of a livelihood, and the loss of a professional reputation, losses greater than mere monetary losses. *Johnson v. Board of Governors of Registered Dentists of State of Oklahoma*, 1996 OK 41, 913 P.2d 1339. Therefore, the Oklahoma Supreme Court has held that allegations in such proceedings must be proven by clear and convincing evidence. *Bottles v. State Board of Medical Licensure and Supervision*, 1996 OK 59, 917 P.2d 471. In reviewing Board's action, we must determine if the record contains substantial evidence from which Board could have determined there was clear and convincing evidence that Physician committed the professional misconduct upon which it based its revocation order. *See DiMauro v. Oklahoma State Board of Medical Examiners*, 1989 OK 31, 769 P.2d 759.

¶3 Physician ran a walk-in only (*i.e.*, no appointment) medical clinic in Hartshorne, Oklahoma starting in 1993. His practices at the clinic came under scrutiny and ultimately, in mid 1995, he ceased practicing at the clinic. In October of 1995, a complaint alleging several forms of professional misconduct was filed and his medical license was suspended in early 1996. Physician had been diagnosed with an illness in late 1995, and the status of that illness and its potential effect upon his ability to professionally perform was closely examined at hearings conducted in mid 1996. At those hearings, Physician not only sought to rebut the charges against him, but also asked that his medical license be reinstated, arguing that his illness was under control and would not interfere with his ability to practice medicine. He was willing to resume practice under certain limiting and supervised conditions. Board instead found that Physician perpetuated a significant harm to public health, safety and welfare because of his acts and omissions and, rather than reinstating, revoked his license to practice medicine and surgery.

¶4 Board based its revocation order, in part, upon its finding that Physician had aided and abetted in the unlicensed practice of medicine because he had "willfully placed a chiropractor, not licensed as a medical doctor, in the office of the defendant to treat the defendant's patients as a medical doctor." The period of time at issue was in mid 1995, when Physician was negotiating with a chiropractor to purchase the clinic.

¶5 During this same time period, and at times when Physician was not at the clinic, his office staff telephoned prescriptions to a local pharmacy on a direct telephone line. The normal practice for prescriptions ordered by telephone was that a staff person from Physician's clinic (not Physician, personally) made the telephone call to the pharmacy. All controversy in this matter arose from prescription orders made by telephone, not any written prescriptions.

¶6 On May 4, 1995, the pharmacist at the pharmacy became concerned when he learned from customers that Physician was not physically present at the clinic on the day when prescriptions had been telephoned in and that the chiropractor was present then. He asked the staff person calling in the prescriptions who had authorized those pre-

---

1. The sections of the Oklahoma Administrative Code pertaining to unprofessional conduct address, respectively, in § 435.10–7–4(2)—excessive prescribing, dispensing or administering; in § 435.10–7–4(6)—dispensing without medical need; and in § 435.10–7–4(21)—aiding or abetting the practice of medicine or surgery by an unlicensed, incompetent or impaired person. Physician was also found to have violated Oklahoma Administrative Code §§ 435.10–7–4(15) and (25) which, respectively proscribe "[g]ross or repeated negligence in the practice of medicine or surgery," and prescribing, distributing, ordering or giving controlled, addictive or dangerous drugs to a habituated, addicted or previously drug dependent person. These violations apparently occurred incidental to the two specific counts of unprofessional conduct since no specific evidence was adduced upon either of these violations. Neither party discussed these specific bases for revocation in their briefs and we will not further address them by separate discussion or analysis.

scriptions and was told by her that they were ordered by Physician. He also asked her if Physician was then present and was told he was not. The staff person did not bring up the name of the chiropractor during the prescription calls, but he learned the name from persons coming into the pharmacy later that day. Board staff introduced into evidence six notes made by the pharmacist in his records on May 4, 1995, in which he memorialized that he had been told Physician was not at the clinic that day, another doctor was present, and that the staff had called in the prescription or informed him to fill the prescription with Physician's name. The pharmacist also testified that the prescriptions were "basically refill prescriptions" and the staff member "had called these before." This is the only evidence the Board staff presented of "aiding or abetting" in any manner.

¶ 7 The staff person who had made the telephone calls to the pharmacist testified that prior to telephoning the prescriptions into the pharmacy she contacted Physician to verify the prescription and received his authorization to order it to be dispensed. She denied calling in any prescriptions for the chiropractor and stated all prescriptions were those authorized by or ordered at the direction of Physician. She also denied that the chiropractor ever held himself out as a medical doctor. When patients who wanted to see Physician came into the walk-in clinic, she informed them of when he would be available. She testified that the chiropractor gave the patients vitamins and adjustments. She testified, as did Physician, that there were some people who were patients of both the chiropractor and Physician.

■ ¶ 8 This record does not contain substantial evidence from which the Board could conclude that clear and convincing evidence existed that Physician had aided and abetted the chiropractor in the practice of medicine without a license. The only material in this record on the issue of "aiding and abetting" indicates Physician allowed the chiropractor to have access to the clinic facilities the chiropractor was trying to purchase prior to the sale being consummated, the chiropractor saw patients when Physician was not

there, and that Physician's staff ordered prescriptions by telephone when he was not physically present in the building. Although the pharmacist was uneasy about Physician not being present when the prescriptions were phoned in, there is nothing in this record which contradicts, impeaches or in any way is contrary to the staff testimony that all the prescriptions were authorized by Physician, and there is other evidence (as noted below) that medications prescribed by Physician are supported by diagnoses in Physician's office records (*i.e.*, were medically necessary). Revocation of Physician's medical license on this basis with this record is not warranted. However, in so finding we do not imply that judgment be given in Physician's favor because this charge was not the sole basis for the Board's revocation of Physician's license.

■ ¶ 9 Physician argues that Board did not have before it clear and convincing evidence of prescribing without medical need, over prescribing of medications, or indiscriminate prescribing of medications or excessive prescribing of medications. There was much evidence that Physician kept very poor office records concerning his patients in that each page did not contain all the information which would be expected for another medical professional to determine the patient's status. These record keeping inadequacies made analysis more difficult. However, the inadequacy of Physician's record keeping is *not* a basis for the revocation of his license.

¶ 10 Board's expert *was* highly critical of Physician's record keeping, but also testified that a diagnosis justifying the medications prescribed was available somewhere within those records. We agree that the proof of prescribing without medical need was insufficient as a matter of law to meet the burden of proof necessary for revocation in that Board's own medical expert admitted that medical need could be established for the patients under scrutiny. Therefore Board could not properly find Physician guilty of prescribing without medical need. However, that one aspect of this charge is not adequately supported by the record does not end our inquiry.

¶ 11 Under 59 O.S.1991 § 508.3(17), a medical doctor commits unprofessional conduct by the "[p]rescribing, dispensing or administering of controlled substances or narcotic drugs in excess of the amount considered good medical practice." It is this lack of "good medical practice" by Physician which forms another basis of Board's revocation of Physician's medical license.

¶ 12 The materials introduced into evidence do not support the second to last sentence of the fifth count (insofar as the number of prescriptions or dosage units mentioned in that charge is not documented in those materials). However, the record contains substantial evidence from which Board could find there was clear and convincing evidence that Physician over prescribed or excessively prescribed medications and had engaged in indiscriminate prescribing of medications.

¶ 13 Board's expert testified that Physician engaged in a pattern of switching prescriptions between powerful and less powerful medications over short periods of time and that this pattern of medication changes was unsafe and had potentially dangerous consequences for the patients. The medical expert also opined that this pattern of switching intermittently from potent to less potent or less potent to potent medications and the use of injections which countered narcotics while at the same time prescribing oral narcotics made "no medical sense whatsoever" and was done "without apparent rhyme or reason." Similarly, medical records before the Board reflected Physician treated some patients with multiple injections (some nearly daily) over short periods of time, a practice which the expert testified was inappropriate. Moreover, at hearing, when his illness was arguably under control and therefore not a factor in his decision making process about medications, Physician not only defended his past pattern of prescribing medications but persisted in the view that there was little or no problem with those practices.

¶ 14 We conclude the record contains substantial evidence from which Board could determine there was clear and convincing evidence to support the charges that Physician had over prescribed or excessively prescribed medications and indiscriminately prescribed medications for his patients. However, we are unable to conclude if, from this violation alone, the Board would have revoked Physician's license rather than impose some other sanction. The matter is remanded to the Board for further proceedings consistent with the views expressed.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

BUETTNER, P.J., concurs.

HANSEN, J., concurs in result.

