2004 OK CIV APP 99

STATE of Oklahoma, ex rel. the OKLA-HOMA BOARD OF MEDICAL LICEN-SURE AND SUPERVISION, Plain-tiff/Appellee,

v.

Lonnie William LITCHFIELD, M.D., License No. 19449, Defen-dant/Appellant.

No. 98,927.

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 14, 2004.

---

Elizabeth A. Scott, Assistant Attorney General, Oklahoma City, OK, for Plaintiff/Appellee.

Linda G. Scoggins, Scoggins & Cross, PLLC, Oklahoma City, OK, and John N. Goodman Oklahoma City, OK, for Defendant/Appellant.

Opinion by KEITH RAPP, Judge.

¶1 Trial court defendant, Lonnie William Litchfield, M.D., (Litchfield) appeals the Final Order of Suspension entered by trial court plaintiff, State ex rel. The Oklahoma State Board of Medical Licensure and Supervision (Board) in this action for suspension of a medical license.

## BACKGROUND

¶2 Litchfield is a board-certified anesthesiologist. Prior to attending medical school, Litchfield obtained a degree in chiropractic and worked as a chiropractor from 1983 until approximately 1994. During this time, Litchfield was accepted into the University of Oklahoma College of Medicine. He graduated from medical school in 1994 and did his residency at the University of Oklahoma Health Sciences Center in anesthesiology. He completed his residency in 1998 and received his board certification in anesthesiology in 2000.

¶3 In about May 2000, Litchfield opened the Pain Management and Rehabilitation Center in Oklahoma City, Oklahoma, referred to as the Hefner–Pointe Clinic, with Troy Tortorici, M.D. Litchfield worked at the Hefner–Pointe Clinic one day a week and Dr. Tortorici worked at the clinic one afternoon per week. The clinic employed a chiropractor, Steve Sweeney, (Sweeney) that worked at the Hefner–Pointe Clinic on a daily basis. The clinic primarily provided services to those suffering injuries due to personal injuries or workers' compensation injuries. The services provided through this clinic included assessing the client, providing independent medical examinations in workers' compensation cases, and providing the necessary follow-up treatment. Litchfield continued his anesthesiology practice at various Oklahoma City hospitals while working at the Hefner–Pointe Clinic.

¶4 Litchfield, Dr. Tortorici, and Sweeney opened another pain management clinic in Midwest City, referred to as the Mid–Del Clinic, in order to provide services in a more convenient location to several of their patients and attorneys. Litchfield was an equal partner in the Mid–Del Clinic with Dr. Tortorici and Sweeney, but never provided any services at the clinic. The Mid–Del Clinic did not staff any physicians at the clinic, but there were numerous chiropractors employed at the clinic.

¶5 The Board filed a Complaint against Litchfield on June 11, 2002, and an Amended Complaint on September 6, 2002, alleging he was guilty of unprofessional conduct. The Board alleged Litchfield used stamped prescriptions for Schedule II through Schedule V controlled dangerous substances and, on at least one occasion, office staff gave a patient a pre-signed prescription for a controlled dangerous substance that Litchfield had previously signed and left in his desk drawer. The Board also alleged Litchfield often prescribed pain medication prior to the patient seeing a physician. In addition, the Board alleged Litchfield allowed his signature to be stamped on prescriptions for Schedule II controlled dangerous substances. Further,

the Board alleged "[a] review of [Litchfield's] records reveals no indication that [he] ever performed a physical examination on [several patients], that he did not establish a legitimate medical need for the medical treatment, that he did not establish a valid physician patient relationship prior to prescribing the medications, and that he failed to maintain an office record which accurately reflects the evaluation, treatment and medical necessity of treatment of the patient."

¶ 6 The Board specifically alleged the standards of professional conduct Litchfield violated as:

A. Engaged in dishonorable or immoral conduct which is likely to deceive, defraud or harm the public in violation of 59 O.S. § 509(9) and OAC 435:10–7–4(11).

B. Violated any provision of the medical practice act or the rules and regulations of the Board or of an action, stipulation, or agreement of the Board in violation of 59 O.S. § 509(14) and OAC 435:10–7–4(39).

C. Aided or abetted, directly or indirectly, the practice of medicine by any person not duly authorized under the laws of this state in violation of 59 O.S. § 509(15) and OAC 435:10–7–4(21).

D. Prescribed a drug without sufficient examination and establishment of a valid physician patient relationship in violation of 59 O.S. § 509(13).

E. Confessed to a crime involving a violation of the anti-narcotic laws of the federal government or the laws of this state in violation of 59 O.S. § 509(8), 63 O.S. § 2–404, OAC 475:25–1–3 and OAC 475:30–1–4.

F. Committed an act which is a violation of the criminal laws of any state when such act is connected with the physician's practice of medicine in violation of 59 O.S. § 509(10).

G. Failed to maintain an office record for each patient which accurately reflects the evaluation, treatment, and medical necessity of treatment of the patient in violation of 59 O.S. § 509(19) and 435:10–7–4(41).

H. Violated a state or federal law or regulation relating to controlled substances in violation of OAC 435:10–7–4(27), 63 O.S. § 2–404 and OAC 475:25–1–3.

I. Prescribed, dispensed or administered a controlled substance or narcotic drugs in excess of the amount considered good medical practice, or prescribed, dispensed or administered controlled substances or narcotic drugs without medical need in accordance with published standards in violation of 59 O.S. § 509(17).

J. Engaged in the indiscriminate or excessive prescribing, dispensing or administering of controlled or narcotic drugs in violation of OAC 435:10–7–4(1).

K. Prescribed, dispensed or administered controlled substances or narcotic drugs in excess of the amount considered good medical practice or prescribed, dispensed or administered controlled substances or narcotic drugs without medical need in accordance with published standard in violation of OAC 435:10–7–4(2) and (6).

L. Engaged in the delegation of authority to another person for the signing of prescriptions for either controlled or non-controlled drugs in violation of OAC 435:10–7–4(7).

M. Engaged in the use of any false, fraudulent, or deceptive statement in any document connected with the practice of medicine and surgery in violation OAC 435:10–7–4(19).

N. Engaged in the improper management of medical records in violation of OAC 435:10–7–4(36).

¶ 7 After a hearing, the Board found Litchfield guilty of unprofessional conduct on ten counts and ordered that his medical license be suspended for one year and, at the conclusion of his suspension, that he be placed on probation for a five-year period. The Board also ordered Litchfield to complete 240 hours of community service as an anesthesiologist during his first year of probation and to pay all costs of the action authorized by law. Litchfield appeals.

## STANDARD OF REVIEW

¶ 8 Allegations in an action involving the revocation of a professional license must be proven by clear and convincing evidence. *Massengale v. Oklahoma Bd. of Examiners in Optometry*, 2001 OK 55, ¶ 20, 29

P.3d 558, 567. "In reviewing Board's action, [this Court] must determine if the record contains substantial evidence from which Board could have determined there was clear and convincing evidence that Physician committed the professional misconduct upon which it based its revocation order." *State of Oklahoma, ex rel. Oklahoma State Bd. of Med. Licensure and Supervision v. Murphy,* 1998 OK CIV APP 36, ¶ 2, 964 P.2d 227, 229. "[I]n determining whether administrative findings and conclusions are supported by substantial evidence, the reviewing court considers all the evidence-including that which fairly detracts from its weight." *Massengale,* 2001 OK 55 at ¶ 20, 29 P.3d at 568.

### ANALYSIS

¶ 9 Litchfield first argues the Board erred in finding he assisted or aided an unlicensed person to practice medicine in violation of 59 O.S.2001, § 509(15) and OAC 435:10–7–4(21).

¶ 10 Title 59 O.S.2001, § 509, provides a nonexclusive list of conduct that shall constitute "unprofessional conduct" as used in Sections 481–514 of the Oklahoma Allopathic Medical and Surgical Licensure and Supervision Act (Act). Section 509(15) provides that unprofessional conduct includes, but is not limited to, "[a]iding or abetting, directly or indirectly, the practice of medicine by any person not duly authorized under the laws of this state." OAC 435:10–7–4(21) defines unprofessional conduct to include "[a]iding or abetting the practice of medicine and surgery by an unlicenced, incompetent, or impaired person."

¶ 11 The Legislature provided a nonexclusive definition of the practice of medicine and surgery in 59 O.S.2001, § 492(C), which states, in part:

. 2. Any offer or attempt to prescribe, order, give, or administer any drug or medicine and surgery for the use of any other person, except as otherwise authorized by law;

3. a. Any offer or attempt, except as otherwise authorized by law, to pre-

vent, diagnose, correct, or treat in any manner or by any means, methods, devises, or instrumentalities except for manual manipulation any disease, illness, pain, wound, fracture, infirmity, defect, or abnormal physical or mental condition of any person, including the management of pregnancy and parturition, except as otherwise authorized by law.

The Oklahoma Attorney General has specifically noted that "[c]hiropractic physicians cannot be authorized to practice in areas outside the traditional and defined scope of chiropractic, such as orthopedics or pediatrics, or to prescribe or administer dangerous drugs." 1992 OK AG 13, ¶ 29.

██ ¶ 12 The record on appeal indicates Litchfield allowed both his receptionist and the chiropractor working at the Hefner-Pointe Clinic to stamp his signature on prescriptions, including Schedule II narcotics. The State presented evidence that this occurred at least thirty-five times. Litchfield admitted this occurred, although mistakenly on his part because he did not know it was not allowed.[1] The evidence also showed that the chiropractor examined a patient, A. N., when Litchfield was not in the office. The chiropractor obtained a prescription for Lortab, a Schedule III controlled dangerous drug, previously signed by Litchfield and left in his desk drawer, and gave the prescription to the patient. The State also presented evidence that on another occasion, Litchfield's receptionist spoke to him on the telephone and told him she was in pain. He authorized her to stamp his signature on a prescription for Percocet, a Schedule II narcotic. No records of this action were included in Litchfield's files.

¶ 13 Based on the record before this Court, including the instances referenced above, this Court finds there was substantial evidence from which the Board could determine there was clear and convincing evidence that Litchfield aided and abetted in the practice of

---

1. This Court notes that the requisite care and knowledge of a physician extends to his selection and use of drugs given to patients and to his knowledge of the dangers inherent in their use.

61 Am.Jur.2d *Physicians, Surgeons, and Other Healers* § 235 (2002) (*citing Gorab v. Zook,* 943 P.2d 423 (Colo.1997)).

medicine without a license. This Court finds the Board did not err in finding Litchfield assisted or aided an unlicenced person to practice medicine in violation of 59 O.S.2001, § 509(15) and OAC 435:10–7–4(21).

¶ 14 Litchfield next argues the Board erred in finding he prescribed a drug without establishing a physician-patient relationship and without sufficient examination in violation of 59 O.S.2001, § 509(13).

¶ 15 Section 509(13) provides that unprofessional conduct shall include, but not be limited to:

13. Prescribing or administering a drug or treatment without sufficient examination and the establishment of a valid physician-patient relationship....

¶ 16 The appellate record indicates Litchfield prescribed narcotics to at least two patients without any examination, which is clearly a violation of Section 509(13). A review of the entire appellate record shows there was sufficient evidence from which the Board could determine there was clear and convincing evidence that Litchfield violated this section.

¶ 17 Next, Litchfield argues the Board erred in finding he "[c]onfessed to a crime involving a violation of the anti-narcotics laws of the federal government or the laws of this state in violation of 59 O.S. § 509(8), 63 O.S. § 2–404, OAC 475:25–1–3 and OAC 475:30–1–4." Litchfield contends confession of a crime requires both the voluntary acknowledgment of criminal guilt and a voluntary statement of the facts from which a jury could infer guilt. He argues that although he stated facts that a jury might find constitutes a crime, he did not acknowledge any criminal guilt.

¶ 18 A confession is defined as "a voluntary statement made by a person charged with the commission of a crime, wherein he acknowledges himself to be guilty of the offense charged, and discloses the circumstances of the act, or the share and participation which he had in it." *Schrack v. State,* 1947 OK CR 260, 84 Okla.Crim. 260, 181 P.2d 270, 275. A confession differs from an admission in that an admission is an acknowledgment of a fact or circumstance from

which a jury may infer guilt, while a confession is "an admission of the criminal act itself, not an admission [of] a fact or circumstance from which guilt may be inferred." *Brewer v. State,* 1966 OK CR 58, ¶ 11, 414 P.2d 559, 563.

¶ 19 Here, the Board found, in part, Litchfield guilty of unprofessional conduct because he violated both 59 O.S.2001, § 509(8) and § 509(10). Under Section 509(8), professional conduct includes:

8. Conviction or confession of a crime involving a violation of:

a. the antinarcotic ... laws and regulations of the federal government,

b. the laws of this state, or

c. State Board of Health rules....

Section 509(10) defines unprofessional conduct as:

10. The commission of any act which is a violation of the criminal laws of any state when such act is connected with the physician's practice of medicine. A complaint, indictment or *confession of a criminal violation shall not be necessary for the enforcement of this provision.* Proof of the commission of the act while in the practice of medicine or under the guise of the practice of medicine shall be unprofessional conduct.... *(Emphasis added.)*

¶ 20 Statutes must be construed as a whole "in harmony with common sense and reason and every portion thereof should be given effect if possible." *Cowart v. Piper Aircraft Corp.,* 1983 OK 66, ¶ 4, 665 P.2d 315, 317. "If a statute is plain and unambiguous and its meaning clear and no occasion exists for the application of rules of construction a statute will be accorded the meaning expressed by the language used." *TRW/Reda Pump v. Brewington,* 1992 OK 31, ¶ 5, 829 P.2d 15, 20.

¶ 21 Section 509(8) expressly states that there must be a "[c]onviction or confession of a crime" to fall within the parameters of its language. Thus, application of the definition of a confession requires that there be an actual acknowledgment of criminal guilt under Section 509(8). This interpretation of Subsection 8 is confirmed upon comparison

with Subsection 10. Subsection 10 provides that unprofessional conduct includes "[t]he commission of any act which is a violation of the criminal laws...." It further states that a confession to a criminal act is not required for the enforcement of Subsection 10. If the Legislature had intended that Subsection 8 not require the acknowledgment of a criminal act by a party it would have explicitly stated so, as it did in Subsection 10.

¶ 22 Here, Litchfield acknowledged that he committed certain acts which a reasonable person might construe as being a crime, but he did not expressly acknowledge the criminal act. Based on the construction of the statute as a whole, this Court finds the Board erred in finding Litchfield was guilty of unprofessional conduct under Section 509(8) because he did not "confess to a crime" as required by Subsection 8.

 ¶ 23 Next, Litchfield argues the Board erred in finding his conduct was a violation of 59 O.S.2001, § 509(10). The Board specifically found that Litchfield was guilty of unprofessional conduct in that he:

F. Committed an act which is a violation of the criminal laws of any state when such act is connected with the physician's practice of medicine in violation of 59 O.S. § 509(10).

¶ 24 A review of the record, including Litchfield's own admissions, and applicable law indicates Litchfield's actions constituted a violation of several criminal laws of this State. Thus, this Court finds there was substantial evidence to support the Board's finding of misconduct under Section 509(10).

 ¶ 25 Litchfield also argues the Board did not have the authority to enforce Oklahoma Board of Narcotics (OBN) laws and regulations and, thus, the Board erred in its conclusions finding a violation of narcotics laws. Litchfield specifically alleges the Board erred in the following conclusions:

H. Violated a state or federal law or regulation relating to controlled substances in violation of OAC 435:10-7-4(27), 63 O.S. § 2-404 and OAC 475:25-1-3.

I. Engaged in the delegation of authority to another person for the signing of prescriptions for either controlled or non-controlled drugs in violation of OAC 435:10-7-4(7).

 ¶ 26 The Legislature may grant rule-making authority to a governing board, as recognized in *Massengale v. Oklahoma Bd. of Examiners in Optometry*, 2001 OK 55, 29 P.3d 558, 560 n. 4 (*citations omitted*):

The Legislature may delegate rule making authority to agencies, boards and commissions to facilitate the administration of legislative policy pursuant to the Administrative Procedures Act, 75 O.S.1991 250 *et seq.* Administrative rules are valid expressions of lawmaking powers having the force and effect of law. Administrative rules, like statutes, are given a sensible construction bearing in mind the evils intended to be avoided.

¶ 27 The Board is authorized to promulgate the necessary rules to effectuate the provisions of the Act. 59 O.S.2001, § 489.[2] The Board is also given broad authority to regulate medicine and impose sanctions for unprofessional conduct. 59 O.S.2001, § 503.[3] Title 59 O.S.2001, § 509 provides a nonexclusive definition of "unprofessional conduct," as used in Section 503, and provides a list of actions that are included in the definition. The unprofessional conduct included in this nonexclusive definition is previously set out in this Opinion.

 ¶ 28 As noted, this Court must construe a statute in relation to the Act as a whole. *City of Bethany v. Public Employees Relations Bd. of the State of Oklahoma*, 1995 OK 99, ¶ 8, 904 P.2d 604, 609. Further, the fundamental rule of statutory construction is

2. Section 489 provides in pertinent part:

 The Board shall from time to time adopt such rules as may be necessary to carry into effect the provisions of this act....

3. Section 503 provides in part:

 The State Board of Medical Licensure and Supervision may suspend, revoke or order any other appropriate sanctions against the license of any physician or surgeon holding a license to practice in this state for unprofessional conduct....

to give effect to the legislative intent and purpose of the statute. *Id.*

¶ 29 Review of the Act as a whole establishes that the Legislature intended the Board to have broad authority to regulate the practice of medicine, including the authority to expand the definition of unprofessional conduct pursuant to Section 509. Based thereon, this Court finds the Board did not err in finding Litchfield violated certain narcotics laws, as set out specifically in Conclusions H and I of the Board's Final Order of Suspension.

¶ 30 Litchfield next alleges the Board erred in its Conclusions G and J relating to regulation of patient records. Litchfield argues the Board failed to establish an ordinary standard of care for measuring the sufficiency of the medical services because it did not introduce evidence establishing the standard of care. He also argues the Board's Conclusions G and J are contrary to the evidence presented.

¶ 31 The Board found Litchfield violated the following standards relating to patient records:

G. Failed to maintain an office record for each patient which accurately reflects the evaluation, treatment, and medical necessity of treatment of the patient in violation of 59 O.S. § 509(19) and [OAC] 435:10–7–4(41).

J. Engaged in the improper management of medical records in violation of OAC 435:10–7–4(36).

¶ 32 Subsection 509(19) provides that "[f]ailure to maintain an office record for each patient which accurately reflects the evaluation, treatment, and medical necessity of treatment of the patient" constitutes unprofessional conduct that may be the basis for sanctions by the Board.

¶ 33 Litchfield admitted he did not maintain medical records on patient A.H. and that he did not maintain medical records pertaining to the prescription for narcotics given to J.T. He also admitted there was "no medical record of a physical examination on [patient L. C.]" and that he did not keep the prescription log pertaining to the narcotics dispensed to L.C. contemporaneously with prescribing the narcotics. In fact, Litchfield admitted these prescriptions were added after meeting with the Board investigators.

¶ 34 Here, this Court is not dealing with whether the records were sufficient. In the patient charts noted above, there were no medical records. Subsection 509(19) requires a "[f]ailure to maintain an office record for each patient. . . ." It assumes that there is a medical record to maintain. Clearly, Litchfield's actions were a violation of Subsection 509(19). This Court, therefore, finds the Board did not err in finding his actions constituted unprofessional conduct under Conclusions G and J.

¶ 35 Litchfield argues Conclusions A and B of the Board are sufficiently vague so as to deprive Litchfield of knowing what actions are included within the alleged violation of standards and are therefore a deprivation of due process.

¶ 36 Conclusions A and B provide:

A. Engaged in dishonorable or immoral conduct which is likely to deceive, defraud or harm the public in violation of 59 O.S. § 509(9) and OAC 435:10–7–4(11).

B. Violated any provision of the medical practice act or the rules and regulations of the Board or of an action, stipulation, or agreement of the Board in violation of 59 O.S. § 509(14) and OAC 435:10–7–4(39).

Litchfield contends the words "dishonorable," "immoral conduct," "deceive," and "defraud," as used in Conclusions A and B of the Board, are vague and the Board has failed to adopt any regulations providing guidance as to what misconduct is sufficient to trigger a proceeding resulting in sanctions.

¶ 37 The Board, citing *Bottles v. State ex rel. Okla. State Bd. of Med. Licensure and Supervision*, 1996 OK 59, 917 P.2d 471, asserts Litchfield waived this argument because he did not raise it before the Board. *Bottles* does provide that this Court will not review an issue not previously brought before the tribunal below. *Id.* at ¶ 4, 917 P.2d at 472. However, the case further provides the exceptions to this rule, including where due process claims are raised, such as in the

present case. *Id.* This Court will therefore consider this issue because it falls within this exception.

■ ¶ 38 In considering the constitutionality of a statute, it is presumed that the Legislature intended to pass a valid law. *Grimes v. City of Oklahoma City,* 2002 OK 47, ¶ 8, 49 P.3d 719, 723. If there is a reasonable way to construe the statute as constitutionally valid, this Court will apply such construction. *Kansas State Bd. of Healing Arts v. Acker,* 228 Kan. 145, 612 P.2d 610, 614 (1980).

■ ¶ 39 "Due process requires that a statute prohibiting certain activity provide 1) reasonable notice of the proscribed activity and 2) guidelines so that the governmental entity responsible for enforcing the statute may do so in a nonarbitrary, nondiscriminatory fashion." *Perez v. Missouri State Bd. of Registration for the Healing Arts,* 803 S.W.2d 160, 165 (Mo.Ct.App.1991).

¶ 40 The most common statutory grounds for suspension or revocation of a medical license are unprofessional, dishonorable, or immoral conduct. *Kansas State Bd. of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828, 834 (1968). The majority of jurisdictions have upheld the validity of these statutes. *Foote,* 436 P.2d at 834. In finding that the board could revoke a medical license on the basis of "extreme incompetence," the Kansas Supreme Court noted:

> Considering the entire policy expressed in the act, we believe the legislature, by enumerating certain acts and classifying them as unprofessional conduct, did not thereby intend to exclude all other acts or conduct in the practice of the healing arts which by common understanding render the holder of a license unfit to practice. It would indeed be difficult, not to say impractical, in carrying out the purpose of the act, for the legislature of [*sic*] list each and every specific act or course of conduct which might constitute such unprofessional conduct of a disqualifying nature. Nor does any such failure leave the statute subject

to attack on grounds of vagueness or indefiniteness.

*Foote,* 436 P.2d at 833.

¶ 41 The Kansas Supreme Court found in *Acker* that the terms "immoral conduct" and "dishonorable conduct" were not so vague as to require the court to find the statute[4] unconstitutional. The court stated:

> While the adoption of specific rules and regulations . . . might be helpful in setting forth specific acts included within the term "dishonorable conduct," no such specification could be all-inclusive, and the failure to adopt such rules and regulations does not render the statute unconstitutional. When the terms "immoral" and "dishonorable" are given their ordinary meaning as understood in common usage, we think they are sufficiently clear that persons of common intelligence and understanding can determine whether any given factual circumstance falls within the proscribed conduct.

*Acker,* 612 P.2d at 616.

¶ 42 The Appellate Court of Illinois found similar language in the Illinois Medical Practice Act of 1983 to be constitutional. *Pundy v. Department of Prof'l Regulation,* 211 Ill. App.3d 475, 155 Ill.Dec. 945, 570 N.E.2d 458 (1991). The court noted that the type of statute was required to be "broad because it would be impossible for a statute to catalog specifically every act of unprofessional or dishonorable conduct which would justify the revocation of a license." *Id.* 155 Ill.Dec. 945, 570 N.E.2d at 465 (citing *Chastek v. Anderson,* 83 Ill.2d 502, 48 Ill.Dec. 216, 416 N.E.2d 247 (1981)).

¶ 43 The Oklahoma Supreme Court has not examined the specific language of Section 509(9) to determine its validity. Litchfield relies on *Fisher v. State Ins. Bd.,* 1929 OK 432, 139 Okla. 92, 281 P. 300, in support of his argument that this Court must find the language to be vague and unconstitutional. In *Fisher,* the Court held a statute allowing the Insurance Board to revoke a license to sell insurance for "other bad practices" to be

---

4. K.S.A.1979 Supp. 65–2836 provided in part:
 A license may be revoked, suspended or limited when the licensee has been found to have committed any of the following acts: ... (b) Immoral, unprofessional or dishonorable conduct or professional incompetency.

too vague and indefinite. The Court stated that "where a statute authorizes the cancellation of a license, the causes for revocation must be reasonably definite and certain, and that the character of the acts constituting the necessary elements that would justify revocation must be stated and charged with reasonable certainty." *Id.* at ¶ 15, 281 P. at 301. The Court held that the petitioner's license could not be revoked under such statutory language because he had not been "charged with acts or conduct of the enumerated causes for canceling an insurance license." *Id.* at ¶ 25, 281 P. at 302. Thus, the Court found the language to be indefinite and set aside the Board's revocation of the license.

■ ¶ 44 The facts here are distinguishable from those set forth in *Fisher.* The Board made specific findings of fact concerning specific instances of conduct and charged Litchfield with violations of the certain enumerated causes of unprofessional conduct. Litchfield had knowledge of what conduct was in question and the violations alleged. Under the facts presented, this Court finds the statute provided Litchfield with reasonable notice of the actions that were the basis of the revocation and was not so vague as to require a determination that the statute was unconstitutional.

¶ 45 As his final allegation of error, Litchfield argues the Board's Order should be remanded with instructions to make specific findings of fact and conclusions of law pursuant to 59 O.S.2001, § 509.1(A),[5] and to set a penalty that accords with the violations.

¶ 46 The Board was required to make specific findings of facts and conclusions of law pursuant to 75 O.S.2001, § 312.[6] The reason the findings of the Board must sufficiently state the supporting evidence is to "enable the reviewing court to intelligently review the decision and ascertain if the facts upon which the order is based create a reasonable basis for the order." *Jackson v. Independent School Dist. No. 16,* 1982 OK 74, ¶ 13, 648 P.2d 26, 32.

■ ¶ 47 This Court has reviewed the findings of facts and conclusions law made by the Board and find they are supported by the evidence and create a reasonable basis for the Order. Furthermore, this Court finds the penalty assessed by the Board to be commensurate with Litchfield's violations of the Act.

## CONCLUSION

¶ 48 This Court finds the Board erred in finding Litchfield was guilty of unprofessional conduct under Section 509(8) because he did not "confess to a crime" as required by Subsection 8 and this finding is reversed. This Court finds the remaining allegations of error to be without merit and the Board's actions to be affirmed in all other respects.

¶ 49 Based on a review of the record and applicable law, this Court concludes the record contains substantial evidence from which the Board could determine there was clear and convincing evidence to support the Board's Final Order of Suspension, except as to 59 O.S.2001, § 509(8), including the sanctions assessed against Litchfield.

¶ 50 AFFIRMED IN PART AND REVERSED IN PART.

COLBERT, C.J., and REIF, P.J., concur.

---

5. Section 509.1(A) provides in pertinent part:

 The State Board of Medical Licensure and Supervision may impose disciplinary actions in accordance with the severity of violation of the Oklahoma Allopathic Medical and Surgical Licensure and Supervision Act.

6. Section 312(A) provides:

 A. A final agency order adverse to a party shall:

1. Be in writing; and
2. Include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the final agency order shall include a ruling upon each proposed finding.